## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re Ex Parte Application of*<br><br>Amazon.com, Inc.,<br><br>              Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery. | C.A. No. _____ |

## DECLARATION OF ETHAN M. THOMAS

I, Ethan M. Thomas, hereby declare as follows:

1.       I am an attorney admitted in California and New York and intending to seek admission *pro hac vice* to practice before this Court in this matter.  I am an associate at the law firm of Fenwick & West LLP, which represents Petitioner Amazon.com, Inc. ("Amazon") in this matter.

2.       Amazon is a party to litigation before the International Trade Commission filed by Nokia Technologies OY and Nokia Corporation.  *In the Matter of Certain Video Capable Electronic Devices, Including Computers, Streaming Devices, Televisions, Cameras, and Components and Modules Thereof*, Inv. Nos. 337-TA-1379, 1380 (USITC).

3.       Amazon, along with other respondents, served requests for production of documents on Nokia Technologies OY and Nokia Corporation in the ITC matter.  These include two requests that cover licenses and licensing negotiations relating to the subject matter of the asserted patents:

<u>REQUEST FOR PRODUCTION NO. 82:</u>

All documents relating to any licenses or agreements concerning patents comparable to one or more of Asserted Patents, Related Patents, and Nokia-SEPs, including any licenses or agreements that include the right to practice such comparable patents, stipulations not to assert such comparable patents, or any other agreement granting any right under or relating to such comparable patents, and documents relating to the negotiation of any such license or agreement.

<u>REQUEST FOR PRODUCTION NO. 83:</u>

All licenses or agreements entered into with any licensee to one or more Asserted Patents, Related Patents, and Nokia-SEPs, including any documents that reflect, refer, or relate to the licenses, including any drafts or proposed terms of such licenses, and all communications related to the same.

A true and correct excerpt of those requests is attached as Exhibit A.

4.      True and correct excerpts of a March 7, 2024 public hearing transcript in the ITC is attached as Exhibit B.

5.      Counsel for Nokia states in the ITC hearing that all requested licensing agreements have been identified and produced:

> JUDGE JOHNSON HINES: All right. Have the
>
> licensees -- I assume all licensees -- if the agreements
>
> have been produced, all licensees have been identified?
>
> MR. SWAIN: That's my understanding -- yeah,
>
> that's my understanding, Your Honor.

Exhibit B at 22:2-6.

6.      The ITC hearing transcript also reflects that Nokia produced approximately 115 licensing agreements in response to the ITC respondents' discovery requests.  Exhibit B at 24:10-13.

7.      Counsel for Nokia stated in the ITC hearing that Nokia had produced "all the negotiation[ documents]" that Nokia had previously produced in 2021 in connection with a separate ITC investigation.  Exhibit B at 14:23-15:4.  The administrative law judge ordered Nokia to produce the additional negotiation documents by the end of March 2024.  Exhibit B at 30:5-31:6 ("Based on what the parties have said, both here today and in their correspondence, the negotiation documents that are being sought are responsive to existing discovery and are relevant. . . .  That said, I would ask, Mr. Swain, for you to provide a list in a discovery response or otherwise of potential licensees, updated -- well, potential licensees since the production in [the separate ITC investigation].").

8.      Amazon seeks these licensing agreements and related negotiations for use in litigation filed by Nokia in Germany and in the Unified Patent Court, because these documents are evidence of reasonable royalties for Nokia's asserted patents.  The documents Amazon seeks through this Section 1782 application are therefore relevant to at least whether Nokia's royalty requests to Amazon are fair reasonable and nondiscriminatory (FRAND) and to what a reasonable royalty would be should Nokia prevail on its infringement claim and seek that remedy.

9.      Nokia and Amazon are engaged in a worldwide patent dispute that involves multiple forums including this Court.  Amazon has taken the position before this Court that, rather than present broad subpoenas under Section 1782 to take full fact discovery for their foreign litigations, and thereby forcing the Court essentially to referee worldwide discovery, the parties

should confer and attempt to reach agreement concerning the use of U.S. discovery materials in foreign litigation.

10.     Amazon attempted just such a resolution with respect to the materials it requests here, a narrow set of licensing documents that were already requested and expected to be produced in a concurrent ITC proceeding.  Amazon first asked for a conference of counsel on March 11, 2024, and over the next month offered several potential solutions that would permit it to use in foreign proceedings a set of *already produced* materials.  These included, for example:  the parties could stipulate to modification or relief from the ITC protective order to permit such use (Amazon's understanding is that the administrative law judge in the ITC proceeding would refuse a unilateral motion for such relief); they could agree to "deem" the materials also produced in Delaware with a provisional AEO designation pending entry of a protective order, and then work out a further agreement concerning their use in Germany and/or the UPC; or Nokia could agree to reproduce the materials specifically for use in those proceedings.  Nokia refused all these options.

11.     On March 19, 2024, I conferred with Nokia's counsel Ryan Koppelman to request consent to use of the licensing agreements and related materials contained in Request for Production Nos. 82 and 83 in Exhibit A in proceedings between Amazon and Nokia outside of the ITC matter, namely, in the District of Delaware and in Germany.  I proposed as a potential solution that Nokia deem the licensing materials produced in the District of Delaware proceedings, after which the parties could agree to an acceptable protective order allowing for cross-use in other jurisdictions.  Amazon had proposed a similar approach to Nokia when attempting to resolve Nokia's Section 1782 application filed against Amazon, and Amazon proposed a similar solution in its opposition to the same.  *See In re: Request from Germany*, No. 1:23-cv-1395 (D. Del. Jan.

30., 2024) (D.I. 25) at 1.  The parties did not reach any agreement, and Mr. Koppelman committed only to consider this request and provide a response.

12.     Nokia did not respond until March 27, 2024, at which point Mr. Koppelman stated without explanation that Nokia would refuse to make the documents available to Amazon for use in foreign litigation.  Amazon then asked Nokia to explain "the reasons that Nokia has declined the request" in order "to evaluate whether there are ways to address Nokia's concerns." Mr. Koppelman responded: "It is not clear not what else you are looking for here," but offered a follow up call.  Attached as **Exhibit C** is a true and correct copy of email correspondence between counsel for Amazon and Nokia reflecting this exchange.

13.     I conducted that call with Mr. Koppelman on April 1, 2024.  On the call, the only justification he offered for Nokia's refusal was that Nokia did not perceive any benefit to agreeing to Amazon's request—i.e., Amazon was not providing any foreign discovery in return.  But Mr. Koppelman did not make any specific proposal.  Amazon had already made clear several times that it is open to reciprocal arrangements of comparable scope, but Mr. Koppelman stated that the materials Nokia sought in its Section 1782 application were not relevant to its U.S. claims and therefore that arrangement did not benefit Nokia.   Mr. Koppelman then instructed Amazon to direct any further attempts to confer to Nokia's separate ITC counsel.

14.     I followed this instruction and conducted a call with Nokia's counsel in the ITC proceedings, Joshua Newcomer, on April 9, 2024.  We discussed potential cross-use of the licensing agreements and related materials in the German litigation, as well as in litigation before the Unified Patent Court.  Mr. Newcomer stated that third-party confidentiality considerations might prevent Nokia from producing the requested documents voluntarily (i.e., absent a subpoena). In other words, it did not matter to Nokia that the materials were already produced to Amazon and

in its possession (or would be imminently).  To honor its confidentiality obligations to its licensing partners, Nokia believes it needs a Court order directing it to produce those same materials to Amazon again, specifically for use in the other proceedings at issue.

15.    Later on April 9, 2024, less than 3 hours after I conferred with Mr. Newcomer, Nokia filed a letter asking the Court to expedite its decision on Nokia's pending Section 1782 application.  *In re: Request from Germany*, No. 1:23-cv-1395 (D. Del. April 9, 2024) (D.I. 32). Nokia filed another letter on this topic on April 12, 2024.  *In re: Request from Germany*, No. 1:23-cv-1395 (D. Del. April 12, 2024) (D.I. 34).  That letter stated: "Amazon said it was considering a motion at the ITC seeking use of the license agreements in Germany."  This claim is not correct— as I explained to Mr. Newcomer on our April 9, 2024 conference, Amazon did *not* intend to seek relief from the ITC protective order if Nokia did not agree to such relief.

16.    Because Nokia believes a subpoena is necessary for it to produce its licensing agreements and related materials outside of the ITC proceedings, and because of the general impasse in the parties' negotiation, Amazon has presented the current application.


I declare under penalty of perjury that the foregoing is true and correct.

Executed in San Francisco, California on April 18, 2024.

Ethan M. Thomas

# EXHIBIT A

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable Cameron R. Elliot**
**Administrative Law Judge**

| | |
|---|---|
| In the Matter of | |
| **CERTAIN VIDEO CAPABLE ELECTRONIC DEVICES, INCLUDING COMPUTERS, STREAMING DEVICES, TELEVISIONS, AND COMPONENTS AND MODULES THEREOF** | **Inv. No. 337-TA-1380** |

## RESPONDENTS' JOINT FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO COMPLAINANTS NOKIA TECHNOLOGIES OY AND NOKIA CORPORATION (NOS. 1-228)

Pursuant to 19 C.F.R. §§ 210.27 and 210.30, the United States International Trade Commission's Rules of Practice and Procedure, and the Ground Rules issued in the above captioned Investigation, Respondents Amazon.com, Inc. and Amazon.com Services LLC (collectively, "Amazon") and HP Inc. ("HP") (collectively, "Respondents") hereby request that Complainants Nokia Technologies OY and Nokia Corporation (collectively "Nokia" or "Complainants") produce, permit inspection and copying, or otherwise cause to be provided, each of the following Documents and Things in the possession, custody, or control of Nokia, within ten (10) after service of these request, to the respective locations of counsel for Respondents, or through electronic means as may be agreed upon between the parties.

## DEFINITIONS

1.     The definitions set forth herein have the broadest possible meaning under Commission Rule 210.27 (19 C.F.R. § 210.27).

1

2.      "Nokia," "You," "Your," and "Complainant" means Complainants Nokia Technologies OY and Nokia Corporation, including without limitation all of their corporate locations, and all predecessors, predecessors in-interest, successor companies, wholly or partially owned subsidiaries, parents, divisions and past and present affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, agents, accountants, attorneys, entities acting in joint venture, licensing agreements, or partnership relationships with Nokia, and others acting on behalf of Nokia.

3.      "Respondents" means Respondents Amazon.com, Inc., Amazon.com Services LLC, HP Inc., and any other person or entity Nokia is permitted to name as a Respondent in any supplement or amendment to the Complaint.

4.      "Microsoft" means Microsoft Corporation.

5.      "Samsung" means Samsung Electronics Co., Ltd., Samsung Electronics America, Samsung Austin Semiconductor, Samsung Research America, Inc., and any other Samsung subsidiary Nokia may identify.

6.      The "'818 patent" means U.S. Patent No. 7,724,818, entitled "Method for Coding Sequences of Pictures," including any corrections, reexaminations, or applications thereof.

7.      The "'714 patent" means U.S. Patent No. 10,536,714, entitled "Method for Coding and an apparatus," including any corrections, reexaminations, or applications thereof.

8.      The "'267 patent" means U.S. Patent No. 11,805,267, entitled "Motion Prediction in Video Coding," including any corrections, reexaminations, or applications thereof.

9.      The "'991 patent" means U.S. Patent No. 8,077,991, entitled "Spatially Enhanced Transform Coding," including any corrections, reexaminations, or applications thereof.

2

10.     The "'321 patent" means U.S. Patent No. 8,050,321, entitled "Grouping of Image Frames in Video Coding," including any corrections, reexaminations, or applications thereof.

11.     "Asserted Patents" means each and any of the '818 patent, the '714 patent, the '267 patent, the '991 patent, and the '321 patent. The term "Asserted Patents" includes each patent individually and all combinations and sub-combinations of the patents collectively.

12.     "Asserted Claim(s)" refers to any claim of the Asserted Patents that is asserted in the Complaint, or any other amended Complaint, and the Notice of Investigation, whether asserted for purposes of infringement, domestic industry, or otherwise, including without limitation claims 6, 7-9, 11, 15, 21, and 23 of the '818 patent; claims 1-8, 9-14, 15-22, 23-28, 29, and 30 of the '714 patent; claims 1-6, 7-12, 13-18, 19-24, 25-30, and 31-36 of the '267 patent; claims 1, 5, 6, 8, 9, 10, 11, 12, 13, 17, 18, 20, 21, 22, 23, 24, 26, 29, 30, 31, 32, 33, 35, and 38 of the '991 patent; and claims 8-9, 10, 11 of the '321 patent.

13.     "Related Patent(s)" shall include, whether or not abandoned and whether or not issued, (a) any patent or patent application that claims priority to any of the Asserted Patents or that shares the same specification, (b) any patent or patent application that claims priority from any patent or patent application on which any of the Asserted Patents claims priority, (c) any patent or patent application on which any of the Asserted Patents depends for priority, (d) any patent or patent application identified in the "Related U.S. Application Data", which is the section of a patent that indicates whether the patent or patent application is related to any other patent or patent application, for any of the Asserted Patents, (e) any patent or patent application that claims priority from any patent or patent application identified in the Related U.S. Application Data for the Asserted Patents, (f) any patent or patent application identified in a terminal disclaimer filed during the prosecution of any of the Asserted Patents, (g) any reissue, reexamination, or *inter partes*

3

review of any of the aforementioned patents or patent applications, and (h) any foreign counterpart patent or foreign counterpart application of any of the Asserted Patents or the aforementioned patents or patent applications (a foreign counterpart patent and foreign counterpart application shall include any foreign patent or foreign patent application in which a claim for priority has been made in either a U.S. application or a foreign application based on the other, or that the disclosures of the U.S. and foreign patent applications are substantively identical), including those foreign counterparts listed in the Complaint.

14.     "Domestic Industry Product" or "Domestic Industry Product" means any product of Nokia or Nokia's licensees on which Nokia intends to rely to support its contention that a domestic industry relating to the articles protected by the Asserted Patents exists in the United States as required by 19 U.S.C. § 1337(a)(2) and (a)(3).

15.     "Accused Product" means any Respondents' apparatus, product, device, process, method, act or other instrumentality that Nokia contends infringes any Asserted Claim and is subject to Nokia's proposed remedy, including without limitation the products identified in paragraphs 172, 175, 185, 188, 190, 201, 204, 214, 217, 219, 230, 233, 243, 246, 248, 259, 272, 275, 277, 288, 291, 301, 304, and 306 of the Complaint.

16.     "Complaint" means the Complaint Under Section 337 of the Tariff Act of 1930, underlying this ITC Investigation, filed by Nokia Technologies OY and Nokia Corporation with the Secretary's Office of the United States International Trade Commission on October 31, 2023, as well as any supplements thereto or amended version thereof.

17.     "Nokia ITC Investigation," "this ITC Investigation," or "this Investigation," means the above-captioned proceeding at the United States International Trade Commission (ITC

Investigation No. 337-TA-1380), entitled "Certain Video Capable Electronic Devices, Including Computers, Streaming Devices, Televisions, and Components and Modules Thereof."

18.     "Named Inventor" means any person named, or that should have been named, as an inventor on any of the Asserted Patents, including without limitation Miska Hannuksela, Jani Lainema, Kemal Ugur, Antti Hallapuro, Mehmet Oguz Biei, and Ye-Kui Wang.

19.     "Prior Art" shall be construed in accordance with the meaning set forth in Title 35 of the United States Code and interpretations provided by the federal judiciary and federal administrative agencies.

20.     "Standard" means any technical standard created, authorized, controlled, and/or developed privately or unilaterally by cooperation, consortium, regulatory body, government, or standards setting organization, including but not limited to the International Organization for Standardization ("ISO"), European Telecommunications Standards Institute ("ETSI"), the International Electrotechnical Commission ("IEC"), International Telecommunications Union ("ITU"), Advanced Television Systems Committee ("ATSC"), and/or 3rd Generation Partnership Project ("3GPP").

21.     "Standard Setting Organization" or "SSO" means any organization that creates, authorizes, and/or develops technical standards, including but not limited to ISO, IEC, ITU, ETSI, ATSC, and/or 3GPP.

22.     "Essential" or "Essentiality" when used in connection with a technology standard or a patent shall have the meaning given to it by the relevant patent or intellectual property rights policy of the Standard Setting Organization responsible for that standard.

23.     "RAND" means reasonable and non-discriminatory and "FRAND" means fair, reasonable and non-discriminatory ("FRAND").  Such terms shall be construed interchangeably,

and the use of one rather than the other shall not be a basis for limiting a response. Both terms shall mean reasonable and non-discriminatory as those terms are used in the intellectual rights policy of the applicable SSO.

24.     The term "SEP" shall mean a patent or patent application which is or may become Essential to one or more of the Relevant Standards or which has been declared as Essential or potentially Essential to one or more of the Relevant Standards.

25.     The term "Nokia-SEP" shall mean a patent or patent application which Nokia believes is or may become Essential to one or more of the Relevant Standards or which Nokia has declared as Essential or potentially Essential to one or more of the Relevant Standards.

26.     "Nokia's H.264 Patent Portfolio" means all patents owned, assigned, or exclusively licensed to Nokia related to and/or declared Essential to the H.264 standard.

27.     "Nokia's H.265 Patent Portfolio" means all patents owned, assigned, or exclusively licensed to Nokia related to and/or declared Essential to the H.265 standard.

28.     "Relevant Standard" means one or more of the standards identified as Advanced Video Coding (AVC), H.264, ISO/IEC 14496-10, High Efficiency Video Coding (HEVC), H.265, and ISO/IEC 23008-2, including any versions thereof.

29.     "IPR" means intellectual property rights.

30.     Document" or "thing" is defined broadly to be given the full scope of that term as contemplated in 19 C.F.R. § 210.30(a) and in Rules 26 and 34 of the Federal Rules of Civil Procedure and shall include any written, printed, recorded, or graphic matter that is or has been in Nokia's actual or constructive possession or control, regardless of the medium on which it is produced, reproduced, or stored, including without limitation anything that can be classified as a "writing," "original," or "duplicate." Any document bearing marks, including without limitation

6

initials, stamped indicia, comments or notations not a part of the original text or photographic reproduction thereof, is a separate document.

31.     "Communication(s)" means any oral, written, or other contact between two or more persons or entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including letters, memoranda, telegrams, telefaxes, telecopies, telexes or emails, text messages, face-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

32.     "Relate To," "Relating To," or "Related To," means directly or indirectly mentioning or describing, pertaining to, being connected with, or reflecting upon a subject matter.

33.     "Concerning" means concerning, regarding, describing, comprising, referring to, Related To, supporting, favoring, opposing, bolstering, detracting from, located in, considered in connection with, bearing on, evidencing, indicating, reporting on, recording, alluding to, responding to, connected with, commenting on, in respect of, about, in relation to, discussing, showing, describing, reflecting, analyzing, constituting, or being.

34.     The term "identify," or "identity" means to state:

        a)      in the case of an entity, its full name, present or last known address, the name under which it was organized, and the identity of persons within the entity most knowledgeable of the subject matter with respect to which the entity is being identified in response to an interrogatory;

        b)      in the case of a natural person, the person's full name, and present or last known address or business affiliation;

c)      in the case of a communication, its date, the identity of the person who made the communication, the identity of the person who received the communication, the identity of each other person present when it was made, and the subject matter discussed;

d)      in the case of a document, the title of the document, the author, the subject matter, and the date of preparation; and

e)      in the case of an agreement, its date, the identity of all parties to the agreement, the identity of the persons most knowledgeable about the agreement all other persons present when it was made, and the subject matter of the agreement.

35.     The singular form of each word shall be interpreted in the plural as well.

36.     The words "and," "or," and "and/or" shall be construed conjunctively or disjunctively, whichever maximizes the scope of each Interrogatory or other discovery request in which they are used.

37.     The words "any" and "all" shall be construed to mean "any and all."

38.     The words "each" and "every" shall be construed to mean "each and every."

39.     The word "including" and every variant thereof shall be construed to mean "including, without limitation."

## INSTRUCTIONS

1.      In answering the following requests, furnish all available information, including information in the possession, custody, or control of Nokia's attorneys, directors, officers, agents, employees, representatives, associates, investigators or division affiliates, partnerships, parents or subsidiaries, and persons under Nokia's control, who have the best knowledge, not merely information known to Nokia based on Nokia's own personal knowledge.

8

2.     To the extent any of these instructions or definitions conflict with any stipulation the parties enter into regarding discovery requests, responses, privilege logs, or other discovery procedures, the signed stipulation shall control.

3.     If Nokia claims any information requested in these requests is privileged, immune from discovery, or otherwise not discoverable, please provide all information falling within the scope of the request which is discoverable, and for each item of information to which a claim of privilege or non-disclosure is made, identify such information with sufficient particularity so that the merits of the claim of privilege or non-disclosure may be assessed, such identification to include at least the following: (a) the basis on which the privilege is claimed; (b) the names and positions of the author of the document and all other persons participating in the preparation of the document; (c) the name and position of each individual or other person to whom the document, or a copy thereof, was sent or otherwise disclosed; (d) the date of the document; (e) the general subject matter of the information; (f) a description of any accompanying material transmitted with or attached to such document; and (g) whether any business or non-legal matter is contained or discussed in such a document.

4.     If Nokia cannot answer any request fully and completely after exercising due diligence to make inquiry and secure the information necessary to do so, please so state and answer each such request to the fullest extent Nokia deems possible; specify the portion of each request that Nokia claims to be unable to answer fully and completely; state the facts upon which Nokia relies to support its contention that it is unable to answer the request fully and completely; and state what knowledge, information, or belief Nokia has concerning the unanswered portion of each such request.

5.      If any document, thing, or source of information that is identified in answer to a request has been destroyed or lost, or is otherwise missing, state, with regard to such: (a) the date of such destruction or loss; (b) the reason for such destruction or loss; (c) the identity of the person or persons who destroyed or lost the document, thing, or source of information; and (d) the identity of the person or persons who authorized such destruction.

6.      Your obligation to respond to these requests is continuing, and your responses must be supplemented to include information you acquire later in accordance with Rule 210.27(f) of the Commission's Rules of Practice and Procedure.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

All documents and things requested to be identified in interrogatories served by Respondents, identified in any Nokia response to such interrogatories, or used in responding to such interrogatories.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications relating to your contention that any Respondent in this Investigation infringes any claim of the Asserted Patents.

**REQUEST FOR PRODUCTION NO. 3:**

All documents concerning or relating to the purchase and analysis of the Accused Products referenced in the Complaint.

**REQUEST FOR PRODUCTION NO. 4:**

Documents sufficient to show all steps taken by or on behalf of Nokia to evaluate alleged infringement of the Asserted Patents prior to filing the Complaint in this Investigation.

10

**REQUEST FOR PRODUCTION NO. 82:**

All documents relating to any licenses or agreements concerning patents comparable to one or more of Asserted Patents, Related Patents, and Nokia-SEPs, including any licenses or agreements that include the right to practice such comparable patents, stipulations not to assert such comparable patents, or any other agreement granting any right under or relating to such comparable patents, and documents relating to the negotiation of any such license or agreement.

**REQUEST FOR PRODUCTION NO. 83:**

All licenses or agreements entered into with any licensee to one or more Asserted Patents, Related Patents, and Nokia-SEPs, including any documents that reflect, refer, or relate to the licenses, including any drafts or proposed terms of such licenses, and all communications related to the same.

**REQUEST FOR PRODUCTION NO. 84:**

All documents and communications relating to your decision to enter into the agreement with Microsoft referenced at ¶ 346 of the Complaint and attached as Exhibit 53C to the Complaint.

**REQUEST FOR PRODUCTION NO. 85:**

All documents and things concerning or relating to Nokia's relationship with any licensee or third party Nokia seeks to rely upon for the purposes of Domestic Industry, including but not limited to any assignments, licenses, indemnification agreements, or any negotiations for actual or proposed transfer of any rights concerning or relating to any patents, including but not limited to the Asserted Patents and Related Patents, any agreements concerning or relating to the licensee or third-party's participation in litigation brought by Nokia, and any agreements concerning or relating to potential payments by Nokia to the licensee or third party concerning or relating to the Asserted Patents and Related Patents.

# EXHIBIT B

# UNITED STATES
# INTERNATIONAL TRADE COMMISSION

---

_____

In the Matter of:                    )  Investigation No.

CERTAIN VIDEO CAPABLE ELECTRONIC     )   337-TA-1379

DEVICES, INCLUDING COMPUTERS,        )

STREAMING DEVICES, TELEVISIONS,      )

CAMERAS, AND COMPONENTS AND          )

MODULES THEREOF                      )

_____

Pages:     1 through 202

Place:     Washington, D.C.

Date:      March 7, 2024

---

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 206
Washington, D.C.  20005
(202) 628-4888
contracts@hrccourtreporters.com

1

```
 1              UNITED STATES INTERNATIONAL TRADE COMMISSION

 2                        Washington, D.C.

 3              BEFORE THE HONORABLE DORIS JOHNSOn HINES

 4                      Administrative Law Judge

 5      _____

 6   In the Matter of:                )   Investigation No.

 7   CERTAIN VIDEO CAPABLE ELECTRONIC  )   337-TA-1379

 8   DEVICES, INCLUDING COMPUTERS,     )

 9   STREAMING DEVICES, TELEVISIONS,   )

10   CAMERAS, AND COMPONENTS AND       )

11   MODULES THEREOF                   )

12      _____

13                  International Trade Commission

14                       500 E Street, S.W.

15                        Washington, D.C.

16

17                    Thursday, March 7, 2024

18

19                 CASE MANAGEMENT CONFERENCE AND

20                        MARKMAN HEARING

21

22        The Hearing commenced in Courtroom A, pursuant to the

23   notice of the Judge, at 9:00 a.m. Eastern.

24

25   Reported by:  Karen Brynteson, FAPR, RMR, CRR
```

```
 1   APPEARANCES:

 2

 3        For Complainants Nokia Technologies Oy and Nokia

 4   Corporation:

 5                  ADAM D. SWAIN, ESQ.

 6                  Alston & Bird LLP

 7                  950 F Street, N.W.

 8                  Washington, D.C. 20004

 9

10                  NICHOLAS T. TSUI, ESQ.

11                  Alston & Bird LLP

12                  1201 West Peachtree Street

13                  Atlanta, GA 30309

14

15                  WARREN LIPSCHITZ, ESQ.

16                  SAMUEL L. MOORE, ESQ.

17                  McKool Smith PC

18                  300 Crescent Court, Suite 1200

19                  Dallas, TX 75201

20

21                  R. MITCH VERBONCOEUR, ESQ.

22                  McKool Smith PC

23                  303 Colorado Street, Suite 2100

24                  Austin, TX 78701

25
```

```
 1    APPEARANCES (Continued):

 2

 3         For Complainants Nokia Technologies Oy and Nokia

 4    Corporation:

 5                    JOSHUA J. NEWCOMER, ESQ.

 6                    McKool Smith

 7                    600 Travis Street, Suite 7000

 8                    Houston, TX 77002

 9

10         On behalf of Respondent Amazon.com, Inc. and

11    Amazon.com Services LLC:

12                    THOMAS N. MILLIKAN, ESQ.

13                    Perkins Coie LLP

14                    11452 El Camino Real, Suite 300

15                    San Diego, CA 92130

16

17                    VERONICA S. ASCARRUNZ, ESQ.

18                    Perkins Coie LLP

19                    700 13th Street, N.W., Suite 800

20                    Washington, D.C. 20005

21

22

23

24

25
```

4

```
 1   APPEARANCES (Continued):
 2        On behalf of Respondent HP Inc.:
 3             ERIC S. NAMROW, ESQ.
 4             STEPHANIE L. ROBERTS, ESQ.
 5             MANU BANSAL, ESQ.
 6             YOUSEF ALMESAD, ESQ.
 7             Morgan, Lewis & Bockius, LLP
 8             1111 Pennsylvania Avenue, N.W.
 9             Washington, D.C. 20004
10
11             JASON E. GETTLEMAN, ESQ.
12             Morgan, Lewis & Bockius, LLP
13             1400 Page Mill Road
14             Palo Alto, CA 94304
15
16             RICK L. RAMBO, ESQ.
17             THOMAS R. DAVIS, ESQ.
18             Morgan, Lewis & Bockius, LLP
19             1000 Louisiana Street, Suite 4000
20             Houston, TX 77002
21
22
23
24
25
```

```
 1   APPEARANCES (Continued):

 2

 3        For the Office of Unfair Import Investigations:

 4                MARISSA DUCCA, ESQ.

 5                JEFFREY HSU, ESQ.

 6                U.S. International Trade Commission

 7                500 E Street, S.W.

 8                Washington, D.C. 20436

 9

10

11   ATTORNEY ADVISOR:

12        PYONG YOON, Esq.

13        Attorney-Advisor

14        U.S. International Trade Commission

15        500 E Street, S.W.

16        Washington, D.C. 20436

17

18

19

20

21

22

23

24

25
```

1    are reasonable and non-discriminatory, allegations that

2    Respondents have not been willing licensees.  Its prayer for

3    relief at the end of the complaint also references these

4    issues.

5        So NOKIA's complaint certainly has these in play.

6    The public interest has been delegated in this investigation

7    on the issues related to standard essential patents and

8    abidance with RAND obligations on both sides.  And then

9    Respondents' defenses, you may have seen from the briefing

10   on the motion to strike, there are several that go directly

11   to these issues of the parties complying with the

12   obligations under the ITU's patent policy.

13       So it goes to all of those issues, Your Honor.

14   And further to relevance, the order in the 1208

15   investigation found the same, based on the exact same

16   allegations that NOKIA made there.  So in the 1208

17   investigation, NOKIA asserted one of the patents asserted

18   here that is essential to the same standard that is at play

19   here, and Judge Lord found that the negotiations with

20   licensees was relevant.

21       And she's not alone in that respect.  Other ALJs

22   have found the same.  In fact, in the 800 investigation,

23   Judge Shaw found that -- and granted a motion to compel

24   license negotiations because RAND defenses were at play.

25   And it bears note that in that investigation it was NOKIA

1   that filed the motion to compel InterDigital's licensing

2   negotiations, which was, in fact, granted because NOKIA put

3   at play some RAND defenses.  So --

4           JUDGE JOHNSON HINES:  Okay.  I'm sorry.  Go

5   ahead.

6           MS. ASCARRUNZ:  So that's our statement on the

7   relevance.

8           JUDGE JOHNSON HINES:  All right.  With respect to

9   public interest, can you explain a little bit more why these

10  particular negotiations will be relevant to public interest?

11          MS. ASCARRUNZ:  Certainly.  So the public

12  interest issues bear on the -- you know, the obligations,

13  again, that NOKIA has to the standard setting organization

14  to, one, make these patents available on reasonable and

15  non-discriminatory terms.  And as we saw from the U.S. Trade

16  Representative's presidential veto in the 794 investigation,

17  you know, he encouraged the Commission and the ALJs to

18  develop the most comprehensive record possible on these

19  issues.  And this goes directly to that point.

20          So NOKIA's relationship and offers and

21  allegations with respect to other either similarly situated

22  or, you know, other potential, prospective, or actual

23  licensees is important.

24          The other sort of not related necessarily to the

25  RAND issues but NOKIA is relying on two of its own licensees

1    for domestic industry as well.  We know that Samsung is one

2    of those, that Samsung has entered into multiple, you know,

3    different, I guess, amendments and such to licenses with

4    NOKIA in the last three years.  That's since the 1208, so,

5    you know, that's something that's new that has happened

6    since then that is relevant here.

7          We know that NOKIA has made allegations against

8    both Lenovo and Apple at the ITC and in District Court on

9    the same standards, on the same patents.  Those have been

10   the subject of negotiations and licenses, again, within the

11   last three years.

12         So we do think it's relevant, and we also

13   especially think that the interim of what happened between

14   1208 and now is also relevant.

15         JUDGE JOHNSON HINES:  Thank you.  That was very

16   helpful.

17         Mr. Swain, does NOKIA disagree that the requested

18   documents are relevant?

19         MR. SWAIN:  So without getting into disputing

20   what the public interest means with respect to FRAND to

21   streamline the issues --

22         JUDGE JOHNSON HINES:  Okay.

23         MR. SWAIN:  -- which Your Honor understands, we

24   don't disagree that it's relevant.  We don't disagree.  In

25   fact, we were agreeing, as part of a larger compact, to

1    produce negotiation agreements in the interim that my friend
2    just discussed, between 2021 when the 1208 investigation
3    concluded where we have all the negotiations and have
4    produced them, and the filing of this investigation.
5             We agreed to produce some of those negotiations
6    within an amount of burden, but it was all part of a larger
7    compact of e-mail discovery between us and Amazon and HP.
8    And we were working on negotiating that.  We want
9    negotiations and discussions from -- between Amazon and HP
10   and various advocacy groups, the highly relevant chip makers
11   in this investigation, the OEMs, the ODMs, and most of that
12   exists in e-mail.
13            And so because all of this invokes e-mail, we
14   were working on a larger omnibus agreement in that regard.
15   So we were very willing to give negotiations, but it's a
16   push and pull of what -- of the burden and the probative
17   value.
18            So to that end, we offered three and then five
19   negotiation sets of Amazon's choosing that they could ask
20   for and we could go search e-mail for.
21            JUDGE JOHNSON HINES:  Okay.
22            MR. SWAIN:  And so that's where we had left the
23   offer when this escalated so quickly.  And my concern is not
24   just the negotiations themselves, but if we can't negotiate
25   the negotiations themselves over e-mail, what about the

1    other five or six topics that we need from Amazon?  My

2    concern is if we can't negotiate an overall agreement here,

3    we're going to be back here disputing the metes and bounds

4    of our e-mail requests to them on June 17th or 18th,

5    hopefully earlier.

6             So we want to negotiate it, and I believe Staff

7    hit the nail on the head.  I think we can reach a resolution

8    here, but to produce all of the negotiations, it's a

9    tremendous burden and mainly on the third parties involved

10   because we have to get notice, we have to go provide those.

11            And so there are specific negotiations they want.

12   We've been willing to give them three, and now five to try

13   and obviate this.  But their request for all the

14   negotiations of all the e-mails for all -- each of the

15   subjects, that goes even beyond what 1208 ordered.  So

16   that's our concern, is the burden of it, and we want to make

17   sure that we're not arguing again over e-mail in a couple

18   weeks.

19            JUDGE JOHNSON HINES:  Sure.  Okay.  Thank you.

20            Hold on one second.  And, Mr. Swain, I'll have

21   more questions for you.

22            Ms. Ducca, do you have anything to add with

23   respect to my specific question on the relevance of the

24   requested documents?

25            MS. DUCCA:  Yeah.  It's directly relevant to the

1   public interest factors, particularly the competitive

2   conditions in the nation --

3                JUDGE JOHNSON HINES:  Okay.

4                MS. DUCCA:  -- as well as public health and

5   welfare.  I think a lot of what it would -- may be included

6   in the negotiations would go to the denial in 337-TA-794

7   when the -- when the rationale for why it was denied was set

8   forth.  So I agree that there is no dispute as to relevance.

9   These are definitely relevant.

10               JUDGE JOHNSON HINES:  Okay.  Thank you very much.

11               Mr. Swain, I have some questions for you.

12               The 1208 investigation, the '808 patent was

13   asserted in that investigation.  It's asserted here.

14               MR. SWAIN:  Yes, Your Honor.

15               JUDGE JOHNSON HINES:  There were motions and an

16   order that issued with respect to license negotiations in

17   that investigation.  So that order issued December 18th,

18   2020.  Documents were produced, it looks like, approximately

19   a month later.

20               Have the documents that were collected in 1208

21   been produced in this investigation?

22               MR. SWAIN:  Yes, as I understand right now, I

23   would say about 98 percent of them have been produced.

24   There is one -- I want to remain on the public record here

25   so I'm not going to say who the licensee is, but there is

1    one licensee that we need to give notice and negotiate with

2    before we produce them.  So that will be coming --

3            JUDGE JOHNSON HINES:  Okay.

4            MR. SWAIN:  But just it's going to be about a

5    week or two.

6            JUDGE JOHNSON HINES:  All right.

7            MR. SWAIN:  And I'm looking to my team to correct

8    me if I'm wrong.

9            JUDGE JOHNSON HINES:  Okay.  But 98 percent is

10   pretty good.  So those documents have been produced.

11           So then here we're talking about e-mail

12   documents.  And, I'm sorry, did you have something to add to

13   that, Ms. Ascarrunz, or --

14           MS. ASCARRUNZ:  It's -- I think there's a bit of

15   confusion on Respondents' side here.  It's not our

16   understanding that they haven't been produced.  It was

17   stated on to us on January 29th, that was over a month ago,

18   that they would be produced.

19           JUDGE JOHNSON HINES:  Okay.

20           MS. ASCARRUNZ:  And then last month, it was

21   stated to us that they had been produced.  When we dug into

22   the public record in the 1208 investigation, we noticed that

23   there was a discrepancy and they -- that clearly couldn't

24   have been the case, so we raised it on a recent CMC.

25   Respondents said they -- I mean NOKIA said that they would

 1    investigate and then realized that they, in fact, had not

 2    produced it and indicated that it would be produced this

 3    week.

 4            JUDGE JOHNSON HINES:  Okay.

 5            MS. ASCARRUNZ:  We saw in the letter to Your

 6    Honor that NOKIA stated it had been produced, and we

 7    searched very thoroughly and we don't see it.  So it doesn't

 8    appear to us as though they've been produced, but -- so

 9    there's some confusion on that side, but we can obviously

10    iron that out separately.

11            JUDGE JOHNSON HINES:  Okay.  Do you have anything

12    else to add?

13            MR. SWAIN:  No.  We're not trying to hide any

14    e-mails.  My understanding is they were produced.

15            JUDGE JOHNSON HINES:  Okay.

16            MR. SWAIN:  And she is correct, there was a few

17    stragglers that were left behind.  And I'm glad my friend

18    brought that to our attention, and we produced those as

19    quickly as we could.  I believe they have been produced this

20    week.  And if I'm wrong, we'll make it right.

21            JUDGE JOHNSON HINES:  Okay.  Ms. Ducca, do you

22    have anything to add on that?

23            MS. DUCCA:  I do not know what has and hasn't

24    been produced.

25            JUDGE JOHNSON HINES:  All right.  So I would ask

1    the parties to discuss that.  It seems pretty clear from the

2    record in 1208 there is correspondence or motions indicating

3    the number of documents that were produced, so there's some

4    universe that was identified there, which should be maybe

5    hopefully relatively easy to correlate to, you know, what

6    can be produced here.

7              The issue -- and I want to make sure that I

8    understand that this is correct, whatever was collected in

9    1208 has been maintained and -- to be produced.  I know that

10   sometimes there are issues where collection databases are no

11   longer maintained after an investigation is terminated, and

12   that happens, but it sounds to me as if whatever was

13   collected in 1208 was kept in some form or fashion, and

14   pending notification to third parties, those documents can

15   be produced.  Is that right?

16             MR. SWAIN:  Yes, Your Honor.

17             JUDGE JOHNSON HINES:  Okay.  All right.  So thank

18   you for raising that.

19             Another question for you, Mr. Swain.  With

20   respect to -- all right.

21             MR. SWAIN:  I'll read you the note.  The

22   remaining documents that Ms. Ascarrunz just spoke about are

23   being produced today and tomorrow.

24             JUDGE JOHNSON HINES:  All right.

25             MR. SWAIN:  So the stragglers.  So they are -- I

1    have seen them, but I don't think they've seen them yet.

2              JUDGE JOHNSON HINES:  Okay.

3              MR. SWAIN:  So I think we're all set.

4              JUDGE JOHNSON HINES:  Understand.  Thank you, and

5    thanks for providing that.

6              So the dispute here relates to e-mail documents.

7    Have non-e-mail documents dated after the production in 1208

8    relating to negotiations with licensees and potential

9    licensees been produced?

10             MR. SWAIN:  We have produced the executed

11   licenses themselves, and I believe the NDA is going into

12   those, but I don't believe any further documentation has

13   been produced because it's all over e-mail or an attachment

14   to an e-mail.

15             JUDGE JOHNSON HINES:  Okay.  All right.

16             And, Ms. Ascarrunz, can you confirm the license

17   agreements post-production in 1208 have been produced?

18             MS. ASCARRUNZ:  All license agreements have been

19   produced as of February 15th.  It took about 12 weeks to get

20   those all in, but they are now all produced.

21             JUDGE JOHNSON HINES:  Okay.  Mr. Swain, so we're

22   looking at a time period of about three years, right, for

23   e-mail production with respect to negotiations with

24   licensees and potential licensees.  Is that -- do you agree

25   with that?

```
 1                MR. SWAIN:  Yes, Your Honor.
 2                JUDGE JOHNSON HINES:  All right.  Have the
 3      licensees -- I assume all licensees -- if the agreements
 4      have been produced, all licensees have been identified?
 5                MR. SWAIN:  That's my understanding -- yeah,
 6      that's my understanding, Your Honor.
 7                JUDGE JOHNSON HINES:  Okay.  What about potential
 8      licensees?  Have those been identified to the Respondents?
 9                MR. SWAIN:  May I have a moment to check with my
10      team to verify?
11                JUDGE JOHNSON HINES:  Yes.
12                MR. SWAIN:  Not the prospective ones, no, Your
13      Honor.
14                JUDGE JOHNSON HINES:  All right.  Is that
15      information that you can provide?
16                MR. SWAIN:  I'm sorry?
17                JUDGE JOHNSON HINES:  Is that information that
18      you can provide?
19                MR. SWAIN:  Whether we did or did not notify them
20      or is that something we --
21                JUDGE JOHNSON HINES:  Okay, let me be clear.
22                MR. SWAIN:  Okay.
23                JUDGE JOHNSON HINES:  Can you provide the
24      identification of potential licensees to the Respondents?
25                MR. SWAIN:  Yes, that's something we can provide.
```

1    Yes.

2              JUDGE JOHNSON HINES:  Okay.  So one thing I

3    wanted to address, and I'm willing to hear proposals from

4    the parties, but one thing I was thinking about, if NOKIA

5    can provide -- you have the licensees and you have the

6    license agreements that exist now.  And you've identified

7    some -- and I'm assuming there may be more, but changes

8    since the 1208 investigation with respect to some of the

9    licensees, existing licensees, and you mentioned Samsung,

10   Lenovo, and Apple, there may be others, if you have the

11   existing licensees and presumably any changes to license

12   agreements that have occurred since 1208, right, which would

13   be memorialized in addendums or some other new license

14   agreement, you have those, if you have an identification of

15   the potential licensees with which NOKIA has communicated

16   since the production in 1208, right, so you have that

17   universe of licensees, potential licensees, would it be

18   possible for the Respondents to identify which of the

19   licensees and potential licensees it would like to see

20   negotiations with?

21             And the reason I raise this -- and there may be

22   additional reasons based on what both Respondents and the

23   Staff have identified as, you know, why these documents are

24   relevant, but at least with respect to the FRAND issues, it

25   seems to me that identifying like or similarly-situated

1   licensees and potential licensees and then getting

2   communications with respect to them, the negotiation

3   histories, may get you the -- maybe not everything -- but

4   the most relevant documents.

5         Do you have a reaction or response to that?

6         MS. ASCARRUNZ:  I hesitate to speak on behalf of

7   both sets of Respondents as we haven't had a chance to

8   confer on that.

9         JUDGE JOHNSON HINES:  Sure.

10         MS. ASCARRUNZ:  But I think in general -- and I

11   searched yesterday, the delta that we're talking about, so

12   since the 1208, the number of licensees at issue is not 115;

13   it's less than 30.

14         JUDGE JOHNSON HINES:  Okay.

15         MS. ASCARRUNZ:  So the burden really that has

16   been spoken about is not as high as it would seem.  That's

17   not including the prospective licensees that we don't know

18   who those are yet.

19         JUDGE JOHNSON HINES:  Okay.

20         MS. ASCARRUNZ:  And I think, Your Honor --

21   speaking just on behalf of Amazon, I'll give HP a chance to

22   address as well, I think that would generally be okay.  The

23   one caveat to that is that there may be negotiations with

24   the full scope of licensees, you know, e-mails back and

25   forth that talk about the royalties actually paid under the

1   licenses that may not be necessarily reflected in the

2   licenses.

3           So, say, the royalty is based on volume and we

4   don't know what that volume ended up being.  And so we're

5   completely in the dark as to what was actually paid under

6   certain licenses.  That would be the one caveat.  And maybe

7   we can carve out a different standalone request on that, but

8   I think we probably could identify the licenses we're

9   interested in.  You know, if we're speaking from zero to 30,

10  I guess the question would then be what number we're talking

11  about.

12          JUDGE JOHNSON HINES:  Sure.

13          Ms. Roberts, do you have any comments?

14          MS. ROBERTS:  We agree with Ms. Ascarrunz's

15  comments on this.  We don't have anything additional.

16          JUDGE JOHNSON HINES:  Okay.  Thank you.

17          Mr. Swain.

18          MR. SWAIN:  Yeah.  Well, Your Honor, I'm glad

19  we're mentioning it and getting somewhere on the number of

20  licensees or prospective licensees that we're going to be

21  producing for, because that's where we were before the

22  letter was written.  And so we were -- you know, we were

23  changing that variable to say, okay, three or five, that's a

24  burden and the burden goes up on us and third parties, so

25  that it's an exchange between us and Amazon and HP as to all

1    the other e-mail category discoveries, right, all of those

2    issues.

3           And so we are amenable and have been amenable to

4    picking out and having Amazon choose which licensees or

5    prospective licensees are comparable, because I think you

6    hit the nail right on the head.  It should matter if it's a

7    comparable company to Amazon or HP.  And those are the ones

8    that are going to have probative value to the FRAND

9    allegations in this investigation.  So that's what we're

10   looking to drive towards.

11          JUDGE JOHNSON HINES:  I appreciate that.  I guess

12   my thought was to look at what might be relevant as opposed

13   to a hard number as three or five, which was what was

14   offered, and instead looking at the issue as to where

15   information may be most useful.

16          So that was my thought.  It's hard for me to say

17   -- and I appreciate that the number of licensees is less,

18   additional licensees.  And, Mr. Swain, I guess I should ask

19   if you agree with what Ms. Ascarrunz said, since the

20   production in 1208, is it generally correct that there are

21   about 30 licensees?

22          MR. SWAIN:  Yes, Your Honor.  The amount that my

23   colleague across the aisle has said, yes, that is generally

24   correct.  I don't know the actual amount, but, yes, it's

25   about that number.

1          JUDGE JOHNSON HINES:  Okay.

2          MR. SWAIN:  Yes.

3          JUDGE JOHNSON HINES:  So one comment,

4     Ms. Ascarrunz, on your comment with respect to, you know,

5     amount paid under certain licenses, would that information

6     be obtainable through a separate discovery request?

7          MS. ASCARRUNZ:  I think so, Your Honor.  The one

8     concern I have is Mr. Swain mentioned that a lot of these

9     conversations are in e-mail --

10         JUDGE JOHNSON HINES:  Yes.

11         MS. ASCARRUNZ:  -- or attachments to e-mail.

12         JUDGE JOHNSON HINES:  Yeah.

13         MS. ASCARRUNZ:  And I think we had been under the

14    impression that if there were responsive documents that are

15    attachments to e-mails, that those would be produced and not

16    shielded from production just because they happen to have

17    been an attachment to an e-mail.  But I think those types of

18    things might be exactly in attachments.  But I think you're

19    right, Your Honor, we could certainly craft a new discovery

20    request that goes specifically to that.

21         JUDGE JOHNSON HINES:  Okay.  Well, before I ask

22    Ms. Ducca, let me clarify with you, Mr. Swain, with respect

23    to attachments to e-mails.

24         I understand this is always a difficult issue as

25    to, you know, what falls in the bucket of e-mail production

1    and whether that necessarily includes attachments to

2    e-mails.  With respect to NOKIA's production here, how has

3    that been done?  Is an attachment to an e-mail considered in

4    the bucket of e-mail?

5           MR. SWAIN:  Typically yes, Your Honor.

6           JUDGE JOHNSON HINES:  Okay.

7           MR. SWAIN:  Of course, I think some of the

8    negotiation -- unfortunately, the answer is it depends.  If

9    it's a discrete document like a specification being shared

10   or the final executed license agreement being shared, yes,

11   of course we'd go get those because they exist elsewhere.

12   Just because something happens to be an attachment to an

13   e-mail, we don't shield it from production.  That being

14   said, if the only place it exists, like draft negotiations

15   and edits to the like, then, no, we have not produced it.

16          JUDGE JOHNSON HINES:  Okay.

17          MR. SWAIN:  If that makes sense.

18          JUDGE JOHNSON HINES:  Okay.  I understand.

19          Ms. Ducca, can I get your comments on my

20   proposal?

21          MS. DUCCA:  I think your proposal was exactly

22   what the Staff had in mind during the negotiations, and I

23   will say, Your Honor, that I think we've come a long way on

24   the negotiation of the e-mail stipulation between the

25   parties.  I think they've worked well together.  They've

1    narrowed the issues.

2           I'll also say that the idea of a separate
3    discovery request for the revenue information, I think, an
4    interrogatory would not shield this sort of agreement that
5    the parties don't have to search e-mail.  You're responding
6    to an interrogatory.  You have an obligation to go get that
7    information, whether it's stored in an e-mail or somewhere
8    else.

9           JUDGE JOHNSON HINES:  Right.

10          MS. DUCCA:  So I think that an interrogatory
11   would be a good compromise on those, that information.

12          JUDGE JOHNSON HINES:  All right.  Okay.  And, you
13   know, I should be clear, I'm not trying in any way to
14   scuttle whatever discussions you've had.  And I appreciate
15   that the parties have worked long and hard.  That seems
16   obvious from what I'm assuming is just the snippet of the
17   communications that I have received about the parties'
18   discussions to try to reach an agreement on discovery.

19          That said, the negotiations between the parties
20   have been ongoing for a few months now.  And given that this
21   issue was raised, and you're both here, I want to see if I
22   can move the parties along to getting these materials, as
23   well as any other materials that might fall within this
24   bucket to get them produced.

25          I am, as I'm sure you are, cognizant that fact

1   discovery close is April 30th.  And it is the beginning of

2   March.  So the time for a discovery stipulation is -- the

3   usefulness of it is quickly passing, notwithstanding the

4   parties' great efforts to get it negotiated.

5           So what I suggest is the following:  Based on

6   what the parties have said, both here today and in their

7   correspondence, the negotiation documents that are being

8   sought are responsive to existing discovery and are

9   relevant.

10          I do not disagree that there is a question of

11  burden.  That said, you are the Complainant, and so the

12  obligation on a Complainant coming here, I believe, is to

13  produce relevant and responsive documents.  So I am somewhat

14  less sympathetic to the question of burden in this

15  situation, particularly where, in the 1208 investigation, as

16  I understand it, there was an order to produce some amount

17  of relevant and responsive documents going back ten years.

18          Here we're looking at a situation of updating

19  discovery for the past three years, so the time period is

20  much less.  I don't know how you maintain your documents or,

21  you know, when things are shipped and stored in a way that

22  makes it more difficult to retrieve.  I don't know that.

23  But we're looking at a much shorter time period.

24          That said, I would ask, Mr. Swain, for you to

25  provide a list in a discovery response or otherwise of

1   potential licensees, updated -- well, potential licensees

2   since the production in 1208.  I would then ask the parties

3   to meet and confer for Ms. Ascarrunz and Ms. Roberts to

4   consider if there is a subset of licensees and potential

5   licensees for which those negotiations since 1208 would be

6   particularly relevant.

7         I'm not going to limit you in number, but I am

8   going to ask you to be reasonable in doing that.  And while

9   you're having those conversations, I don't know the scope of

10   the other e-mail issues that exist between the parties, but

11   I do suggest that you continue to discuss and resolve them

12   quickly.

13         What I would -- what I would like to happen --

14   and, again, I don't know how difficult this would be, given

15   that I don't know, Mr. Swain, how these documents are

16   maintained.  I understand there are issues with respect to

17   notice to third parties, et cetera.

18         But with the close of fact discovery being April

19   30th, I would like the parties to target around the end of

20   this month to get this -- these materials produced.  I would

21   like the parties to see and try as hard as they can to get

22   the discovery stipulation finalized and entered well before

23   that.

24         It seems you are close.  And, like I said, I will

25   reiterate, I'm not trying to scuttle anything that the

1    parties were doing.  I understand that there were arguments
2    that this issue was premature and shouldn't be discussed
3    now.  I disagree with that, but at the same time, I do want
4    the parties to go forth and continue negotiating with the
5    hope that whatever guidance I can provide is useful in that
6    respect.

7            Are there any questions on that, Mr. Swain?

8            MR. SWAIN:  No, Your Honor.  Thank you very much
9    for your time this morning.  I think this has gone a long
10   way to help solving this dispute, so we thank you.

11           JUDGE JOHNSON HINES:  I hope so.

12           Ms. Ascarrunz?

13           MS. ASCARRUNZ:  No questions, Your Honor.  Thank
14   you for the guidance.

15           JUDGE JOHNSON HINES:  Ms. Roberts?

16           MS. ROBERTS:  Nothing else, Your Honor.  Thank
17   you.

18           JUDGE JOHNSON HINES:  Ms. Ducca?

19           MS. DUCCA:  Nothing else, Your Honor.

20           JUDGE JOHNSON HINES:  All right.  One thing I'll
21   also note, and I don't know if I've done this before in this
22   particular investigation, if there is an issue on this, you
23   know, the procedural schedule has discovery conferences set
24   every month.  The next -- when is the next one -- April
25   11th.  If something comes up between that or before that,

# EXHIBIT C

**From:** Ethan Thomas
**Sent:** Tuesday, April 9, 2024 10:42 AM
**To:** Joshua J. Newcomer; Todd Gregorian
**Cc:** Koppelman, Ryan; Ghosh, Maddie; Ravi Ranganath; Tsui, Nick; Mitch Verboncoeur
**Subject:** Re: Amazon/Nokia Discovery

Thanks Josh, we will call you then

Ethan Thomas

Fenwick | Associate | 415-875-2238 | EThomas@fenwick.com | Admitted to practice in California and New York.

---

**From:** Joshua J. Newcomer <jnewcomer@McKoolSmith.com>
**Sent:** Tuesday, April 9, 2024 10:15:11 AM
**To:** Todd Gregorian <TGregorian@fenwick.com>
**Cc:** Koppelman, Ryan <Ryan.Koppelman@alston.com>; Ethan Thomas <EThomas@fenwick.com>; Ghosh, Maddie <Maddie.Ghosh@alston.com>; Ravi Ranganath <rranganath@fenwick.com>; Tsui, Nick <Nick.Tsui@alston.com>; Mitch Verboncoeur <mverboncoeur@McKoolSmith.com>
**Subject:** RE: Amazon/Nokia Discovery

**\*\* EXTERNAL EMAIL \*\***
Can you all talk at 1:30 CT today?



**Joshua J. Newcomer**
Principal
Houston, TX
Tel: (713) 485-7316
www.mckoolsmith.com

NOTICE OF CONFIDENTIALITY: The information contained in and transmitted with this e-mail is SUBJECT TO THE ATTORNEY-CLIENT and ATTORNEY WORK PRODUCT PRIVILEGE and is CONFIDENTIAL. It is intended only for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, use or reliance upon the information contained in and transmitted with this e-mail by or to anyone other than the addressee designated above by the sender is unauthorized and strictly prohibited. If you have received this e-mail in error, please notify the sender by reply immediately. Any e-mail erroneously transmitted to you should be immediately destroyed.

-----Original Message-----
From: Todd Gregorian <TGregorian@fenwick.com>
Sent: Tuesday, April 9, 2024 11:09 AM
To: Joshua J. Newcomer <jnewcomer@McKoolSmith.com>
Cc: Koppelman, Ryan <Ryan.Koppelman@alston.com>; Ethan Thomas <EThomas@fenwick.com>; Ghosh, Maddie <Maddie.Ghosh@alston.com>; Ravi Ranganath <rranganath@fenwick.com>; Tsui, Nick <Nick.Tsui@alston.com>; Mitch Verboncoeur <mverboncoeur@McKoolSmith.com>
Subject: Re: Amazon/Nokia Discovery

Thanks. We just tried your extension and got voicemail. When are you available today?

On Apr 8, 2024, at 9:31 PM, Joshua J. Newcomer <jnewcomer@mckoolsmith.com> wrote:

** EXTERNAL EMAIL **
Todd – happy to discuss at your convenience.

<image717372.png>
<image807619.png>
NOTICE OF CONFIDENTIALITY: The information contained in and transmitted with this e-mail is SUBJECT TO THE ATTORNEY-CLIENT and ATTORNEY WORK PRODUCT PRIVILEGE and is CONFIDENTIAL. It is intended only for the individual or entity designated above. You are hereby notified that any dissemination, distribution, copying, use or reliance upon the information contained in and transmitted with this e-mail by or to anyone other than the addressee designated above by the sender is unauthorized and strictly prohibited. If you have received this e-mail in error, please notify the sender by reply immediately. Any e-mail erroneously transmitted to you should be immediately destroyed.
From: Koppelman, Ryan <Ryan.Koppelman@alston.com>
Sent: Monday, April 8, 2024 5:32 PM
To: Todd Gregorian <TGregorian@fenwick.com>; Joshua J. Newcomer <jnewcomer@McKoolSmith.com>
Cc: Ethan Thomas <EThomas@fenwick.com>; Ghosh, Maddie <Maddie.Ghosh@alston.com>; Ravi Ranganath <rranganath@fenwick.com>; Tsui, Nick <Nick.Tsui@alston.com>; Mitch Verboncoeur <mverboncoeur@McKoolSmith.com>
Subject: Re: Amazon/Nokia Discovery

Todd,

Please reach out directly to Josh Newcomer at McKool, copied here. He will be your point of contact on this issue for the ITC. Please email or call him to arrange a meet and confer.

Regards,
Ryan
_____
From: Todd Gregorian <TGregorian@fenwick.com<mailto:TGregorian@fenwick.com>>
Sent: Monday, April 8, 2024 1:44 PM
To: Koppelman, Ryan <Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com>>
Cc: Ethan Thomas <EThomas@fenwick.com<mailto:EThomas@fenwick.com>>; Ghosh, Maddie <Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com>>; Ravi Ranganath <rranganath@fenwick.com<mailto:rranganath@fenwick.com>>; Tsui, Nick <Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com>>; Verboncoeur, Mitch <mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com>>
Subject: Re: Amazon/Nokia Discovery

EXTERNAL SENDER – Proceed with caution
_____


Ryan,

We reached out to Nokia's ITC counsel based on your direction that we should discuss these issues with them. Unfortunately they have ignored multiple requests to confer. Could you prevail upon them to give us a response?

-t

On Mar 29, 2024, at 10:46 AM, Koppelman, Ryan <Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com>> wrote:

** EXTERNAL EMAIL **
That works.

Ryan W. Koppelman
Partner
ALSTON & BIRD
Los Angeles, California
+1 213 576 1009 (O)
+1 323 538 1421 (M)


From: Ethan Thomas <EThomas@fenwick.com<mailto:EThomas@fenwick.com>>
Sent: Friday, March 29, 2024 10:35 AM
To: Koppelman, Ryan <Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com>>; Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com>>
Cc: Ravi Ranganath <rranganath@fenwick.com<mailto:rranganath@fenwick.com>>; Tsui, Nick
<Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com>>; Verbonceur, Mitch
<mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com>>
Subject: RE: Amazon/Nokia Discovery

EXTERNAL SENDER – Proceed with caution
_____

Thanks Ryan, can we plan on 11:30 AM on Monday?

Ethan Thomas
Fenwick | Associate | +1 415-875-2238 | EThomas@fenwick.com<mailto<mailto:EThomas@fenwick.com%3cmailto>:>

From: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R
yan.Koppelman@alston.com>>>
Sent: Friday, March 29, 2024 9:29 AM
To: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.
com>>>; Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@
fenwick.com>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie
.Ghosh@alston.com>>>
Cc: Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@
fenwick.com>>>; Tsui, Nick
<Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com>>
>; Verboncoeur, Mitch
<mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.c
om%3cmailto:mverboncoeur@McKoolSmith.com>>>
Subject: RE: Amazon/Nokia Discovery

** EXTERNAL EMAIL **
Ethan – Today is not good but I have good availability on Monday (other than 12:30-1:30pm PT) if that works.

3

Ryan W. Koppelman
Partner
ALSTON & BIRD
Los Angeles, California
+1 213 576 1009 (O)
+1 323 538 1421 (M)

From: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.
com>>>
Sent: Friday, March 29, 2024 9:22 AM
To: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R
yan.Koppelman@alston.com>>>; Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@
fenwick.com>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie
.Ghosh@alston.com>>>
Cc: Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@
fenwick.com>>>; Tsui, Nick
<Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com>>
>; Verboncoeur, Mitch
<mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.c
om%3cmailto:mverboncoeur@McKoolSmith.com>>>
Subject: Re: Amazon/Nokia Discovery

EXTERNAL SENDER – Proceed with caution
_____


Ryan, are you available for a follow up call sometime between 10:30 and 1:00 (PT) today?

Thank you,
Ethan


Ethan Thomas

Fenwick | Associate | 415-875-2238<tel:415-875-2238> |
EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.c
om<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:ETh
omas@fenwick.com>>> | Admitted to practice in California and New York.

_____
From: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R
yan.Koppelman@alston.com>>>
Sent: Thursday, March 28, 2024 3:16:42 PM
To: Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@

fenwick.com>>>; Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>
Cc: Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com>>>; Tsui, Nick
<Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com>>>; Verboncoeur, Mitch
<mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com>>>
Subject: RE: Amazon/Nokia Discovery

** EXTERNAL EMAIL **

Todd,


It is not clear not what else you are looking for here, but I can be available for a follow up call to discuss.



Regards,

Ryan



Ryan W. Koppelman

Partner
ALSTON & BIRD
Los Angeles, California
+1 213 576 1009 (O)

+1 323 538 1421 (M)



From: Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com>>>
Sent: Wednesday, March 27, 2024 9:55 AM
To: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>; Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>

Cc: Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com>>>; Tsui, Nick
<Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com>>>; Verboncoeur, Mitch
<mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com>>>
Subject: RE: Amazon/Nokia Discovery

EXTERNAL SENDER – Proceed with caution

_____

Ryan,

Thank you for getting back to us with a statement of Nokia's position. In an effort to see whether an agreement is possible, would you mind explaining the reasons that Nokia has declined the request? That will allow us to evaluate whether there are ways to address Nokia's concerns.

Best,

Todd Gregorian

Fenwick | Partner | +1 415-875-2402 |
tgregorian@fenwick.com<mailto<mailto:tgregorian@fenwick.com%3cmailto<mailto:tgregorian@fenwick.com%3cmailto%3cmailto:tgregorian@fenwick.com%3cmailto>>:>

From: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>>
Sent: Wednesday, March 27, 2024 9:46 AM
To: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com>>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>>
Cc: Todd Gregorian

<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com>>>; Ravi Ranganath <rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com>>>; Tsui, Nick <Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com>>>>; Verboncoeur, Mitch <mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com>>>>

Subject: RE: Amazon/Nokia Discovery


** EXTERNAL EMAIL **

Ethan,


We have considered Amazon's request as you explained it on our recent call. We understand that Amazon is requesting that it be allowed to use, in Germany and Delaware, Nokia license agreements produced in ITC discovery despite such use being expressly disallowed by the operative ITC protective order. We further understand that Amazon has not considered what type of relief it might seek here, but you had theorized on our call it might include a motion in the ITC or Amazon's own 1782 application.


If Amazon intends to file any motion related to these issues in the ITC proceedings or in the Delaware infringement proceedings, that should be raised appropriately in the matter(s) where relief is sought—potentially with Nokia's respective lead counsel for a meet and confer. To the extent Amazon is not making any proposal related to this 1782 application, we do not currently believe this to be the appropriate avenue for Amazon to raise an issue regarding use in Germany and Delaware of Nokia's confidential information produced at the ITC.


In sum, under these circumstances Nokia declines your request to use discovery produced under the Protective Order in the ITC for other litigations. If Amazon has any additional proposals for Nokia to consider relating to your request, please do not hesitate to reach out.


Regards,

Ryan


Ryan W. Koppelman

Partner
ALSTON & BIRD
Los Angeles, California
+1 213 576 1009 (O)

+1 323 538 1421 (M)

From: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.
com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:ET
homas@fenwick.com>>>>
Sent: Friday, March 22, 2024 2:04 PM
To: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R
yan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com%3cmailto:
Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie
.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghos
h@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>>
Cc: Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@
fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.co
m%3cmailto:TGregorian@fenwick.com>>>>; Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@
fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.co
m%3cmailto:rranganath@fenwick.com>>>>; Tsui, Nick
<Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com<
mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@al
ston.com>>>>; Verboncoeur, Mitch
<mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.c
om%3cmailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur
@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com>>>>
Subject: RE: Amazon/Nokia Discovery

EXTERNAL SENDER – Proceed with caution

_____

Ryan, Nick, and Mitch,

Thank you again for speaking earlier this week about Nokia's licensing agreements and related materials that are the
subject of discovery in the ITC proceedings. Please let us know once you have had a chance to confer with your client
about a potential agreement to allow for use of those materials in German proceedings, including whether any
assurances around confidentiality would make Nokia amenable to such an arrangement.

Thank you,

Ethan


Ethan Thomas

Fenwick | Associate | +1 415-875-2238 | EThomas@fenwick.com<mailto<mailto:EThomas@fenwick.com%3cmailto<mailto:EThomas@fenwick.com%3cmailto%3cmailto:EThomas@fenwick.com%3cmailto>>:>


From: Koppelman, Ryan <Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>>
Sent: Tuesday, March 19, 2024 2:11 PM
To: Ethan Thomas <EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com>>>>; Ghosh, Maddie <Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>>
Cc: Todd Gregorian <TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com>>>>; Ravi Ranganath <rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com>>>>; Tsui, Nick <Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com<mailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com%3cmailto:Nick.Tsui@alston.com>>>>; Verboncoeur, Mitch <mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com<mailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com%3cmailto:mverboncoeur@McKoolSmith.com>>>>
Subject: RE: Amazon/Nokia Discovery


** EXTERNAL EMAIL **

Thanks, Ethan. I am forwarding your invite to Nick Tsui and Mitch Verboncoeur. They may be joining our call as well.

Ryan W. Koppelman

Partner
ALSTON & BIRD
Los Angeles, California
+1 213 576 1009 (O)

+1 323 538 1421 (M)

From: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:ET homas@fenwick.com>>>>
Sent: Tuesday, March 19, 2024 12:11 PM
To: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R yan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com%3cmailto: Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie .Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghos h@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>>
Cc: Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@ fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.co m%3cmailto:TGregorian@fenwick.com>>>>; Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@ fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.co m%3cmailto:rranganath@fenwick.com>>>>
Subject: RE: Amazon/Nokia Discovery

EXTERNAL SENDER – Proceed with caution

_____

Hi Ryan, 4pm PT today works; I will circulate call information shortly.

Thank you,

Ethan

Ethan Thomas

Fenwick | Associate | +1 415-875-2238 |
EThomas@fenwick.com<mailto:<mailto:EThomas@fenwick.com%3cmailto<mailto:EThomas@fenwick.com%3cmailto%3
cmailto:EThomas@fenwick.com%3cmailto>>:>


From: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R
yan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:
Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>>
Sent: Tuesday, March 19, 2024 8:57 AM
To: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.
com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:ET
homas@fenwick.com>>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie
.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghos
h@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>>
Cc: Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@
fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.co
m%3cmailto:TGregorian@fenwick.com>>>>; Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@
fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.co
m%3cmailto:rranganath@fenwick.com>>>>
Subject: RE: Amazon/Nokia Discovery


** EXTERNAL EMAIL **

Ethan – I can talk between 3-5pm PT today if that works.


Ryan W. Koppelman

Partner
ALSTON & BIRD
Los Angeles, California
+1 213 576 1009 (O)

+1 323 538 1421 (M)


From: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.
com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:ET
homas@fenwick.com>>>>
Sent: Friday, March 15, 2024 1:48 PM
To: Koppelman, Ryan

11

<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R
yan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com%3cmailto:
Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie
.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghos
h@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>>
Cc: Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@
fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.co
m%3cmailto:TGregorian@fenwick.com>>>; Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@
fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.co
m%3cmailto:rranganath@fenwick.com>>>>
Subject: RE: Amazon/Nokia Discovery


EXTERNAL SENDER – Proceed with caution

_____


Ryan, thank you for your response. Could you please let us know your availability on Monday and Tuesday, and we can
find a time?


Specifically, we will ask whether Nokia is amenable to use of the materials noted below in the Delaware and Germany
proceedings. If any of your colleagues are more appropriately positioned to speak to that, we are happy to loop them in
as well.


Best,

Ethan


Ethan Thomas

Fenwick | Associate | +1 415-875-2238 |
EThomas@fenwick.com<mailto<mailto:EThomas@fenwick.com%3cmailto<mailto:EThomas@fenwick.com%3cmailto%3
cmailto:EThomas@fenwick.com%3cmailto>>:>


From: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R
yan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com%3cmailto:
Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>>

Sent: Wednesday, March 13, 2024 2:26 PM
To: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com>>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>>
Cc: Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com>>>>; Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com>>>>
Subject: RE: Amazon/Nokia Discovery


** EXTERNAL EMAIL **

Ethan,


My apologies for the delay in responding. I am closing discovery this week in an ITC investigation. Are you available early next week to discuss? In the meantime, can you explain a little more what you have in mind here and how it relates to the 1782 proceeding. Thanks.


Regards,

Ryan


Ryan W. Koppelman

Partner
ALSTON & BIRD
Los Angeles, California
+1 213 576 1009 (O)

+1 323 538 1421 (M)


From: Ethan Thomas
<EThomas@fenwick.com<mailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com<mailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com%3cmailto:EThomas@fenwick.com>>>>

13

Sent: Monday, March 11, 2024 4:29 PM
To: Koppelman, Ryan
<Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:R
yan.Koppelman@alston.com<mailto:Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com%3cmailto:
Ryan.Koppelman@alston.com%3cmailto:Ryan.Koppelman@alston.com>>>>; Ghosh, Maddie
<Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie
.Ghosh@alston.com<mailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghosh@alston.com%3cmailto:Maddie.Ghos
h@alston.com%3cmailto:Maddie.Ghosh@alston.com>>>>
Cc: Todd Gregorian
<TGregorian@fenwick.com<mailto:TGregorian@fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@
fenwick.com<mailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.com%3cmailto:TGregorian@fenwick.co
m%3cmailto:TGregorian@fenwick.com>>>>; Ravi Ranganath
<rranganath@fenwick.com<mailto:rranganath@fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@
fenwick.com<mailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.com%3cmailto:rranganath@fenwick.co
m%3cmailto:rranganath@fenwick.com>>>>
Subject: Amazon/Nokia Discovery


EXTERNAL SENDER – Proceed with caution

_____



Counsel,



In the ITC proceedings, Nokia has been requested to produce certain licenses or agreements concerning asserted
patents, related patents, Nokia-SEPs, and comparable patents (see RFP Nos. 82, 83). We would like to discuss an
agreement concerning use of materials responsive to those requests in other proceedings. Can you please let us know
your availability this week to meet and confer on this issue?



Thank you,

Ethan



Ethan Thomas

Fenwick | Associate | +1 415-875-2238 |
EThomas@fenwick.com<mailto<mailto:EThomas@fenwick.com%3cmailto<mailto:EThomas@fenwick.com%3cmailto%3
cmailto:EThomas@fenwick.com%3cmailto>>:>

_____

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.