## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re Ex Parte Application of*<br><br>Amazon.com, Inc.,<br><br>               Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery. | CA No.: 24-493 (GBW) |

## NOKIA OF AMERICA CORPORATION'S OPENING BRIEF IN SUPPORT OF MOTION TO VACATE AND QUASH

OF COUNSEL:

Ryan W. Koppelman
Alston & Bird LLP
350 S. Grand St. 51st Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
ryan.koppelman@alston.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
Telephone: 302-777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Nokia

Dated: July 19, 2024

## TABLE OF CONTENTS

I.  Introduction.

1

II.  Statement of Facts.                                                               4

III. Legal Standards.                                                                  9

IV.  Argument.                                                                         11

    A.  The first Intel factor favors vacating the Order and quashing the          11
    Subpoena because "the evidence sought is within the foreign tribunal's
    jurisdictional reach, and thus accessible absent section 1782 aid."

    B.  The third Intel factor favors vacating the Order and quashing the          12
    Subpoena because "the request conceals an attempt to circumvent foreign
    proof gathering restrictions or other policies of a foreign country."

    C.  The fourth Intel factor and Fed. R. Civ. P. 26 and 45 favor vacating the    13
    Order and quashing the Subpoena because the discovery Amazon seeks is
    unduly intrusive and burdensome.

    D.  Ordering Cross-Use of Discovery Among Domestic Proceedings is not          16
    Authorized by Section 1782.

    E.  Nokia Respondents and Third Parties Did Not Have an Opportunity to         17
    be Heard.

    F.  Under Principles of Comity, Courts Should Refrain from Collaterally        19
    Modifying Protective Orders from Other Adjudicative Bodies.

V.  Conclusion                                                                         20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Bayer AG v. Betachem, Inc.*,
    173 F.3d 188 (3d Cir. 1999)...................................................................................10

*Doe v. Doe Agency*,
    608 F. Supp. 2d 68 (D.D.C. 2009) .........................................................................20

*Glenmede Tr. Co. v. Thompson*,
    56 F.3d 476 (3d Cir. 1995)....................................................................................20

*Headwater Rsch. LLC v. Samsung Elecs. Am., Inc.*,
    No. 2:22-CV-00422-JRG-RSP, 2024 U.S. Dist. LEXIS 62132 (E.D. Tex. Apr. 4,
    2024) (denying modification of protective order for cross-use based on lack of good
    cause and denying Section 1782 application).........................................................20

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998)....................................................................................9

*In re Elec. Arts, Inc.*,
    298 Fed. Appx. 568 (9th Cir. 2008).......................................................................15

*In re EWE Gasspeicher GmbH*,
    612 F. Supp. 3d 402 (D. Del 2020)..........................................................................9

*In re Ex Parte Eni S.P.A.*,
    20-mc-334-MN, 2021 U.S. Dist. LEXIS 52304 (D. Del. Mar. 19, 2021) ........................11, 13

*In re Global Energy Horizons Corp.*,
    647 Fed. Appx. 83 (3rd Cir. Apr. 2016) .....................................................9, 10, 13

*In re King Mun.*,
    No. 22-mc-243-MN-JLH, 2023 U.S. Dist. LEXIS 192250 (D. Del. Oct. 26, 2023)....9, 11, 12,
    14

*In re Martinez*,
    2024 U.S. Dist. LEXIS 101450 (S.D. Fla. Jun. 6, 2024) (treating a motion to quash an
    *ex parte* application under 28 U.S.C. § 1782 as both a motion to quash and motion to
    intervene) .............................................................................................................18

*In re Mesa Power Group, LLC*,
    No. 2:11-mc-280-ES, 2012 U.S. Dist. LEXIS 179870 (D. N.J Nov. 20, 2012).....................10

*In re Mota*,
    No. 19-00369 (MN), 2020 U.S. Dist. LEXIS 3261 (D. Del. Jan. 8, 2020) ........................1, 10

*In re Nokia Techs. Oy*,
No. 23-01395-GBW, 2024 U.S. Dist. LEXIS 70832 (D. Del. Apr. 18, 2024) ........................13

*In re Qualcomm Inc.*,
162 F. Supp. 3d 1029 (N.D. Cal. 2016) ..................................................................................12

*In re Sauren Fonds-Select Sicav*,
No. 2:16-CV-00133 (SDW) (LDW), 2016 U.S. Dist. LEXIS 148281 (D.N.J Oct. 26,
2016) ...................................................................................................................................10, 11

*In re Yilport*,
22-3028-ES-AME, 2023 U.S. Dist. LEXIS 28275 (D.N.J. Feb. 21, 2023) ...........................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ........................................................................................................ passim

*Kulzer v. Esschem, Inc.*,
390 F. App'x 88 (3d Cir. 2010) ..............................................................................................11

*Lae Techs. Hong Kong Ltd. v. Demuren*,
No. 23-2314 (ZNQ), 2024 U.S. Dist. LEXIS 35060 (D.N.J. Feb. 29, 2024) ("[a]n
order authorizing discovery under Section 1782 may be issued on an *ex parte*
application, without prejudice to the subpoenaed party's right to file a motion to
vacate the order and/or quash the subpoena.") ..................................................................1, 10

*Nokia Corp. et al. v. Amazon.com, inc.*,
No. 1:23-cv-1232-GBW ............................................................................................................4

*Nokia Tech. Oy v. Amazon.com Inc, et al*,
No. 1:23-cv-1236-GBW ............................................................................................................4

*Pinchuk v. Chemstar Prods. LLC*,
13-mc-306-RGA, 2014 U.S. Dist. LEXIS 86781 (D. Del. June 26, 2014) (granting a
motion to vacate a 1782 order and quash the 1782 subpoena) ...............................................11

*Twilio, Inc. v. Telesign Corp.*,
No. 16-cv-06925-LHK (SVK), 2017 U.S. Dist. LEXIS 52532 (N.D. Cal. Apr. 5,
2017) .................................................................................................................................19, 20

*United Nuclear Corp. v. Cranford Ins. Co.*,
905 F.2d 1424 (10th Cir. 1990) ....................................................................................4, 19, 20

*United States v. Fulton*,
2013 U.S. Dist. LEXIS 123229 (D.N.J. Aug. 29, 2013) ........................................................18

*United States v. Stewart*,
1997 U.S. Dist. LEXIS 2444 (E.D. Pa. Mar. 4, 1997) ..........................................................18

*United States v. Wecht*,
    484 F.3d 194 (3d Cir. 2007)................................................................................17

**RULES**

Fed. R. Civ. P 26................................................................................................10, 13, 14

Fed. R. Civ. P. 26 and 45................................................................................................9, 13

Fed. R. Civ. P. 26(c)(1)................................................................................................20

Fed. R. Civ. P. 26(d)(1)................................................................................................14

Fed.R.Civ.P 45................................................................................................1, 11, 16

Fed.R.Civ.P 45(d)(3)(A)(i)................................................................................................16

Fed. R. Civ. P. 45(d)(3)(B)(i)................................................................................................15

Fed.R.Civ.P. 60................................................................................................1

Rule 45 and Rule 26................................................................................................14

**STATUTES**

28 U.S.C. 1782................................................................................................9

28 U.S.C. § 1782................................................................................................ passim

**OTHER AUTHORITIES**

19 C.F.R. § 210.34(a)................................................................................................20

337-TA-1379 and -1380................................................................................................5

## I.    Introduction.

Amazon recently served a subpoena on Nokia of America Corporation ("NOAC")[1] pursuant to this Court's Order that was entered *ex parte* on July 11, 2024. Consistent with NOAC's due process rights, NOAC moves under Fed.R.Civ.P. 60 to vacate the Court's Order on Amazon's *Ex Parte* Application (the "*Ex Parte* Application") and also moves under Fed.R.Civ.P 45 to quash the subpoena (the "Subpoena"). *See In re Mota*, No. 19-00369 (MN), 2020 U.S. Dist. LEXIS 3261, *2 (D. Del. Jan. 8, 2020) ("recipients can raise[] objections and [otherwise] exercise[] their due process rights by motions to quash"); *Lae Techs. Hong Kong Ltd. v. Demuren*, No. 23-2314 (ZNQ), 2024 U.S. Dist. LEXIS 35060, *5 (D.N.J. Feb. 29, 2024) ("[a]n order authorizing discovery under Section 1782 may be issued on an *ex parte* application, without prejudice to the subpoenaed party's right to file a motion to vacate the order and/or quash the subpoena.").

Amazon's *Ex Parte* Application and Subpoena seek discovery for use in patent infringement actions pending in the Munich and Mannheim Regional Courts of Germany ("the German Proceedings") and the Unified Patent Court ("UPC") in Europe. The Subpoena seeks voluminous discovery, including: (i) licenses that Nokia Tech. Oy and Nokia Corp. entered with approximately 115 third-party licensees, and (ii) over 27,000 pages of licensing communications with those third-parties. However, the Munich Regional Court in Germany and the UPC have issued rulings regarding which licensing documents should be produced in those cases, so Amazon's requested discovery here conflicts with the rulings of those foreign courts. Remarkably, Amazon never updated and informed this Court of those important European

---

[1] Amazon only served NOAC with the Subpoena and did not serve the other respondents identified in its *Ex Parte* Application: Nokia Technologies Oy ("Nokia Tech. Oy"), Nokia Corporation ("Nokia Corp."), and Alcatel Lucent SAS (collectively the "Nokia Respondents").

rulings, even though these recent developments refute the merits of Amazon's *Ex Parte*
Application under this Court's precedent. In its *Ex Parte* Application, Amazon also
misrepresented the scope of documents Amazon had allegedly requested in the foreign
proceedings, falsely stating that Amazon had requested the same set of documents in the German
Proceedings and the UPC that it requested with its *Ex Parte* Application and Subpoena. In fact,
Amazon only requested the *license agreements* from the European courts and never requested
the 27,000+ pages of licensing communications it further seeks here.

Amazon has already received a production of a ~100 license agreements in the Munich
Regional Court. On June 3 and June 7, 2024, Nokia Tech. Oy voluntarily requested a court order
from the UPC and Munich Regional Court, respectively, for disclosure of the ~100 AVC/HEVC
licenses, despite Amazon representing to this Court that Nokia was refusing to produce the
requested licenses in Germany. On June 10 and 24, 2024, the Munich Regional Court has already
ruled that Nokia Tech. Oy need only produce ~100 license agreements specific to the
AVC/HEVC technologies, while denying Amazon's request for additional licenses which would
include ~15 licenses to multiple technologies. On 28 June 2024, Nokia Tech. Oy then disclosed
the approximately 100 licenses to Amazon in the proceeding before the Munich Regional Court.

The UPC, for its part, responded to Amazon's and Nokia Tech. Oy's requests stating with
an order stating Amazon's requests for disclosure of license agreements are unlikely to be
successful at present, and asking Amazon to state whether Amazon wanted to continue adhering
to its current disclosure requests and advised Amazon that it should also take into account that
Nokia Tech. Oy has submitted disclosure requests itself for disclosing licenses. The UPC further
stated that in the court's experience, the undifferentiated disclosure of more than 100 license
agreements is generally not expedient and not always relevant for the decision on the merits.

Therefore, the UPC suggested that the parties reach a consensus on the license agreements to be submitted in direct negotiations.  By failing to update this Court of the status in Germany and the UPC and continuing to seek the additional license agreements here, Amazon attempted to surreptitiously circumvent the ruling in Germany.

Amazon's *Ex Parte* Application and Subpoena also place a disproportionate burden on NOAC without a showings from Amazon for an actual need for the discovery or how Amazon would use the requested documents in Germany or the UPC. There is no need for NOAC to produce the same ~100 AVC/HEVC licenses here when Amazon has already received them in Munich, and Nokia Tech. Oy has voluntarily requested an order to produce them in the UPC. Producing the same ~100 AVC/HEVC licenses again here would require NOAC to send ~100 new notices to a majority if not all of the third-party licenses regarding how their confidential information in the licenses will be treated in this Delaware proceeding and provide an opportunity to object. For the remaining ~15 multiple-technologies license agreements, the Munich Regional Court has already rejected Amazon's request for additional licenses, the UPC is currently disinclined to order a production of 100+ licenses. Indeed, in Germany at least, there is a constitutional right for at least one natural person of a Party to have access to these Court materials if they are introduced in Germany, which goes to the burden of producing additional trade secret material without a clearly demonstrated need, and  Amazon's *Ex Parte* Application does not explain in any detail how it would propose to use them—a statutory requirement of Section 1782.

Lastly, the Court's Order also purported to deem certain documents that were produced in the two pending ITC proceedings to be produced in two pending Delaware proceedings (the "Cross-Use Ruling"). There are numerous issues with this Cross-Use Ruling, which Amazon

sought and obtained on an *ex parte* basis, only after it cut-off negotiations in April on ITC cross-use.  First, the Cross-Use Ruling exceeds any statutory authority under Section 1782, which is expressly limited to obtaining discovery *for use in a foreign proceeding* outside the United States. Amazon's provided no authority or even argument as to why this type of *domestic cross-use* is legally permissible or even necessary, instead merely mentioning in passing that the Court should "deem the requested materials produced in the Delaware patent litigation." D.I. 1 at 2; *but* s*ee United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) (cautioning that "the district court must refrain from issuing discovery orders applicable only to collateral litigation"). Second, Amazon improperly sought this cross-use order on an *ex parte* basis, and the Court did not provide the Nokia respondents nor the relevant 100+ third party licensees a sufficient opportunity to be heard.  While Section 1782 applications for discovery in foreign courts may be heard on an *ex parte* basis, more general *ex parte* rulings are highly disfavored, and it was clear error to enter the domestic Cross-Use Ruling here on an *ex parte* basis with no authority offered by Amazon and no opportunity for affected parties to be heard. For this additional reason and for all the reasons more fully explained below, the Court should vacate its Order.

## II.    Statement of Facts.

### A.    The Domestic Proceedings.

On October 27 and October 31, 2023, Nokia Tech. Oy and Nokia Corp. filed two Delaware patent infringement actions. *See Nokia Corp. et al. v. Amazon.com, inc.,* No. 1:23-cv-1232-GBW at D.I. 1; *Nokia Tech. Oy v. Amazon.com Inc, et al*, No. 1:23-cv-1236-GBW at D.I. 1 (collectively, "Delaware Actions"). Amazon filed motions to dismiss for failure to state a claim as to certain patents in both cases. *See* Case No. 1:23-cv-1232-GBW at D.I. 18; Case No. 1:23-

cv-1236-GBW at D.I. 17. The Court has not ruled on Amazon's motions to dismiss, and discovery has not begun in the Delaware Actions. Koppelman Decl. ¶ 3.

On October 31, 2023, Nokia Tech. Oy and Nokia Corp. filed two ITC actions against Amazon.com, Inc., Amazon.com Services LLC, and HP Inc. ("HP"), which are set for evidentiary hearings (trials) in July 2024 and September 2024 (337-TA-1379 and -1380, respectively; collectively, "ITC Actions"). Koppelman Decl. ¶ 4. During ITC discovery, Amazon requested license agreements and communications between Nokia Tech. Oy and Nokia Corp. and other third-party licensees. *See* D.I. 3, Exhibit A to Thomas Decl.  To comply with these ITC requests, Nokia notified and sought consents (or non-objections) from 100+ third parties to produce responsive documents to Amazon. Koppelman Decl. ¶ 5.  In doing so, Nokia attached copies of the ITC protective orders showing how their confidential business information ("CBI") in the licensing documents would be protected, including a provision that outside counsel and experts receiving licensing CBI will be required to first sign and file an agreement stating they will "utilize such confidential business information solely for purposes of this investigation." *See* Koppelman Decl., ¶ 6. Exs. A, B.

**B.  The Foreign Proceedings.**

In October and November 2023, Nokia Tech. Oy filed patent infringement cases in the Munich and Mannheim Regional Courts in Germany and the UPC. Koppelman Decl. ¶ 8. The relevant cases here assert patent infringement based on Amazon's practicing of the H.265/HEVC video coding standard (which is the successor standard to H.264/AVC). Koppelman Decl. ¶ 8. In the German Proceedings, Amazon requested that Nokia Tech. Oy be ordered to produce (i) the approximately 100 H.264/AVC and H.265/HEVC licenses that Nokia Tech. Oy had identified to Amazon in the course of negotiations, and (ii) all other licenses pertaining inter alia to Nokia's video coding portfolio. Smentkowski Decl. ¶ 6.  Based on my current understanding of what was

5

similarly searched for and produced in the ITC, Amazon's licensing requests in Germany would likely amount to about ~115 license agreements, including ~100 AVC/HEVC licenses and ~15 multiple-technology licenses which are further directed to technologies beyond AVC/HEVC, for example cellular telecom standards and other video coding technologies. Koppelman Decl. ¶ 8. Amazon did not request production of licensing communications in Germany. Smentkowski Decl. ¶ 14.

Nokia Tech. Oy was willing to produce licenses that Nokia Tech. Oy had identified to Amazon in the course of negotiations, consisting of ~100 H.264/AVC and H.265/HEVC licenses. *Id.* at ¶ 7. On June 7, 2004, Nokia Tech. Oy thus voluntarily requested a court order from the Munich Regional Court for disclosure of those ~100 AVC/HEVC licenses. *Id.* In the Mannheim Regional Court proceeding, Nokia's deadline to reply to Amazon's statement of defense and make such disclosure requests ends on 16 August 2024. *Id.* On 10 and 24 June 2024, the Munich Regional Court has issued orders to produce those ~ 100 AVC/HEVC licenses and at the same time has rejected Amazon's request as to any additional licenses that Amazon requested. *Id.* at ¶ 7, Ex. A, B. By submission of 28 June 2024, Nokia Tech. Oy then disclosed the ~100 licenses and sales data for certain of those licenses to Amazon in the proceeding before the Munich Regional Court. *Id.* at ¶ 9. Amazon filed an immediate appeal against the rejecting decision of the Munich Regional Court, and the Munich Regional Court rejected the immediate appeal. *Id.* at ¶ 10, Ex. C.

In the UPC proceeding, Amazon likewise requested that Nokia Tech. Oy be ordered to produce (i) the ~100 AVC/HEVC licenses, and (ii) all other licenses pertaining inter alia to Nokia's video coding portfolio. *Id.* at ¶ 11. In the UPC proceeding, Nokia Technologies Oy was again willing to produce licenses the ~100 AVC/HEVC licenses. To this end, on June 3, 2024,

Nokia Technologies Oy voluntarily requested a court order from the UPC for disclosure of those approximately ~100 AVC/HEVC. *Id.* at ¶ 12.  In response, the UPC issued an order on July 12, 2024. *Id.* at ¶ 13, Ex. B. The UPC order states that Amazon's requests for disclosure of license agreements are unlikely to be successful at present. *Id.* In that order, the UPC asked Amazon to state whether Amazon wanted to continue adhering to its current disclosure requests and advised Amazon that it should also take into account that Nokia Tech. Oy for its part, has submitted disclosure requests itself and appears willing in principle to submit license agreements. *Id.*  In its order, the UPC stated its view that in the court's experience, the undifferentiated disclosure of more than 100 license agreements is generally not expedient and not always relevant for the decision on the merits. *Id.*  Therefore, the UPC suggested that the parties reach a consensus on the license agreements to be submitted in direct negotiations. *Id.*

### C.  Nokia's and Amazon's Section 1782 *Ex Parte* Application.

On November 9, 2023, Nokia Tech. Oy and Alcatel Lucent SAS filed in the Eastern District of Virginia an *Ex Parte* Application for 1782 discovery from Amazon for use in litigation in Germany. *See* 1:23-cv-1395 (D. Del.) at D.I. 1. On December 7, 2023, Nokia's 1782 application was transferred to this Court pursuant to a stipulation. *Id.* at D.I. 10, 12. On January 2, 2024, Nokia submitted a joint letter to this Court requesting the scheduling of a discovery teleconference regarding its 1782 application. *Id.* at D.I. 19. On January 24, 2024, the Court entered an order requiring Amazon to submit a letter response as to why Nokia's 1782 application should not be granted and requiring Nokia to provide a reply to Amazon's letter. *Id.* at D.I. 24. On January 30, 2024, pursuant to Court order, Amazon responded to Nokia's 1782 Application. *Id.* at D.I. 25. On February 2, 2024, Nokia filed a reply. *Id.* at D.I. 30. On April 18, 2024, the Court denied Nokia's 1782 Application. *Id.* at D.I. 35.

On April 18, 2024, the same day the Court denied Nokia's Section 1782 *Ex Parte* Application, Amazon filed its own *Ex Parte* Application that is the subject of this Motion. D.I. 1. Amazon's *Ex Parte* Application purports to seek discovery from Nokia Tech. Oy, Alcatel Lucent SAS, Nokia Corp., and Nokia of America Corporation (the "Nokia Respondents"). Amazon requested the Court issue a summons, which Amazon served on NOAC's registered agent, but no other Nokia Respondents. D.I. 7, 8. On May 16, 2024, NOAC filed a motion to quash based on an improper summons and service of process, and in that motion NOAC requested: "After the Court resolves this motion to quash, Nokia respectfully *requests the opportunity to be heard on the substance of Amazon's Ex Parte Application via an appropriate briefing schedule*." D.I. 9 at 3, 9. On May 28, 2024, Amazon filed a notice of non-opposition to NOAC's motion to quash, stating that Amazon "served Nokia of America Corporation ('Nokia') with its Section 1782 application *as a courtesy*, solely to provide it notice of the application… [and] neither service of the application nor issuance of a summons was ever required." D.I. 10. The Court has not ruled on NOAC's motion to quash.

On July 2, 2024, the parties wrote a joint letter to this Court, requesting the scheduling of a discovery teleconference regarding Amazon's 1782 application. D.I. 11. On July 3, 2024, the Court issued an order requiring the parties to: "meet and confer promptly and attempt to reach agreement on reasonable reciprocal discovery requests for use in the foreign proceedings in Germany and the Unified Patent Court." D.I. 12. On July 8, 2024, the parties met and conferred. Koppelman Decl. ¶ 13. In that meet and confer, it was Nokia's position that Amazon was already receiving ~100 AVC/HEVC licenses in the Germany, and that this should be sufficient given that the Munich Regional Court had declined to the additional licenses Amazon requested. *Id*. Nokia was willing to expand that production somewhat if part of a reciprocal exchange, as

ordered by this Court, but Amazon demanded production of everything requested in its *Ex Parte* Application while refusing to reciprocate with any technical documents sought in Nokia's 1782 application. *Id.* On July 10, 2024, the parties wrote a joint letter to the Court, informing it that they had not reached a reciprocal discovery agreement. D.I. 13. On July 11, 2024, the Court granted Amazon's *Ex Parte* Application. D.I. 14. On July 12, 2024, Amazon served only NOAC with a subpoena, providing no date for compliance. D.I. 15; Koppelman Decl. ¶ 12Koppelman Decl, Ex. D. On July 18, 2024, counsel for Amazon refused to agree that Nokia's response date was 14 days after service and threatened argue Nokia waived its rights if it did not respond in 7 days. *Id.* ¶ 15.

## III.   Legal Standards.

### A.  28 U.S.C. § 1782.

The purpose of 28 U.S.C § 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 sets forth three mandatory requirements: "(1) the person from whom discovery is sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding before a foreign or international tribunal'; and (3) the application is made by an 'interested person.'" *In re EWE Gasspeicher GmbH*, 612 F. Supp. 3d 402, 404 (D. Del 2020) (citing to *In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998)).

If the statutory requirements are met, the district court then has discretion to grant or deny a Section 1782 application. *See In re King Mun.*, No. 22-mc-243-MN-JLH, 2023 U.S. Dist. LEXIS 192250, *10-11 (D. Del. Oct. 26, 2023). In exercising its discretion, a district court considers the four Intel factors set by the Supreme Court. *In re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at *11; *Intel*, 542 U.S. at 264-65. The Federal Rules of Civil Procedure are

expressly incorporated into 28 U.S.C. 1782. *In re Global Energy Horizons Corp.*, 647 Fed. Appx. 83, 85-86 (3rd Cir. Apr. 2016). Thus, Fed. R. Civ. P. 26 and 45 both apply to a 1782 application. *See*, e.g., Bayer AG, 173 F.3d 188 at 191 (stating that Fed. R. Civ. P 26 is applicable to a 1782 application); *see also In re Global Energy Horizons Corp.*, 647 Fed. Appx. at 85-86.

**B.  Motion to Quash and Vacate.**

Parties subpoenaed through a 1782 application have a due process right to file motions to quash. *In re Mota*, No. 19-00369 (MN), 2020 U.S. Dist. LEXIS 3261, *2 (D. Del. Jan. 8, 2020) ("recipients can raise[] objections and [otherwise] exercise[] their due process rights by motions to quash") (internal quotations omitted); *see Lae Techs. Hong Kong Ltd. v. Demuren*, No. 23-2314 (ZNQ), 2024 U.S. Dist. LEXIS 35060, *5 ('[a]n order authorizing discovery under Section 1782 may be issued on an *ex parte* application, without prejudice to the subpoenaed party's right to file a motion to vacate the order and/or quash the subpoena.") (citing to *In re Yilport*, 22-3028-ES-AME, 2023 U.S. Dist. LEXIS 28275, *3 (D.N.J. Feb. 21, 2023)); *see also In re Mesa Power Group, LLC*, No. 2:11-mc-280-ES, 2012 U.S. Dist. LEXIS 179870, *9 (D. N.J Nov. 20, 2012). This is because "Section 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure." *Lae Techs. Hong Kong Ltd.*, 2024 U.S. Dist. LEXIS 35060, *5 (citing *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999)).

To decide a motion to vacate under Section 1782, a district court should first consider the statutory requirements. *In re Sauren Fonds-Select Sicav*, No. 2:16-CV-00133 (SDW) (LDW), 2016 U.S. Dist. LEXIS 148281, *6-8 (D.N.J Oct. 26, 2016). If the court reaffirms that petitioner met the statutory factors, it should then consider whether it appropriately exercised its discretion in view of the *Intel* factors. *See id*. A 1782 order should be vacated if a court determine that either the statutory factors were not met or that it did not appropriately exercise its discretion in

view of the four discretionary Intel factors. *See id*. at *6-8; *see, e.g., Pinchuk v. Chemstar Prods. LLC,* 13-mc-306-RGA, 2014 U.S. Dist. LEXIS 86781 (D. Del. June 26, 2014) (granting a motion to vacate a 1782 order and quash the 1782 subpoena); *In re Ex Parte Eni S.P.A.*, 20-mc-334-MN, 2021 U.S. Dist. LEXIS 52304, *12 (D. Del. Mar. 19, 2021).

## IV.   Argument.

Amazon's *Ex Parte* Application should be strongly disfavored under the *Intel* factors and therefore the Order should be vacated and the Subpoena Quashed. The Subpoena is further improper under the requirements of Rule 45 and quashed. Finally, it was error to grant Amazon's requested Cross-Use Ruling, because an *ex parte* 1782 application is the proper vehicle for it.

### A.   The first *Intel* factor favors vacating the Order and quashing the Subpoena because "the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid."

The first *Intel* factor considers "whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid." *In re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at *11. Here, the license agreements that Amazon seeks through its *Ex Parte* Application and Subpoena are demonstrably within the foreign courts' reach and accessible absent Section 1782. Moreover, the Munich Regional Court has *already ruled* on which license agreements are or are not to be produced in the Munich Regional Court Proceeding. Smentkowski Decl. ¶ 8. In light of that, "principles of comity direct this court not to substitute its own judgment for" that of a foreign court. *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016). The UPC court has issued an order outlining its view on the lack of relevance of the license agreements and suggested the parties negotiate directly *in the UPC Proceeding* to determine which license agreements will be produced. Smentkowski Decl. ¶ 13. Given that the license agreements requested through Amazon's 1782 application are accessible

in the foreign proceedings, and both courts have spoken regarding production of the license

agreements, this favors vacating the Order and quashing the Subpoena.

**B. The third *Intel* factor favors vacating the Order and quashing the Subpoena because "the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country."**

The third *Intel* factor considers "whether the request conceals an attempt to circumvent

foreign proof gathering restrictions or other policies of a foreign country or the United States." *In*

*re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at *11. Amazon falsely stated in its 1782

application that it had already requested a court order in Germany and the UPC "for the

documents sought through this Section 1782 application." D.I. 4., Steininger Decl. ¶ 9, 16. But in

fact, Amazon never requested the 27,000+ pages of *licensing communications* in the foreign

proceedings. Smentkowski Decl. ¶ 14. In the Munich Regional Court, Amazon was further

granted access to the ~100 AVC/HEVC license and denied access to any further licenses, even

after an appeal, yet never informed this Court of those highly relevant rulings. Amazon has

engaged in a "surreptitious" effort to circumvent those rulings, and this favors vacating the Order

and quashing the Subpoena.

This Court has held that "a perception that an applicant has 'side-stepped less than

favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's

analysis.'" *In re Nokia Techs. Oy*, No. 23-01395-GBW, 2024 U.S. Dist. LEXIS 70832, *10 (D.

Del. Apr. 18, 2024). In that case, this Court held that a party's "failure to attempt discovery in [a

foreign court] indicates an attempt to circumvent the [foreign court's] discovery rules." *Id*. Here,

Amazon did not attempt to seek discovery of the licensing communications in the Germany and

the UPC. Smentkowski Decl. ¶ 14. Now, it likely would have been futile, as was the situation in

*In re Nokia Techs*, because in Germany you can only request documents by name as opposed to

category. But here, unlike *In re Nokia Techs*, Amazon did this as a "surreptitious" effort by

misrepresenting to this Court that it had requested all the licensing materials in Germany and UPC when it had not.

Furthermore, Amazon's requests for the additional licenses beyond the ~100 AVC/HEV were denied in the Munich Regional Court and deemed unlikely to be successful in the UPC. Smentkowski Decl. ¶¶ 8, 10, 13; *In re Ex Parte Eni S.P.A.*, 20-mc-334-MN, 2021 U.S. Dist. LEXIS 52304, *12 (D. Del. Mar. 19, 2021) (finding a Section 1782 application may be viewed as an attempt to circumvent foreign proof-gathering restrictions when the foreign tribunal has rejected requests for the same documents). Amazon surreptitiously never updated the Court about these denials and adverse rulings. Therefore, this factor weighs against Amazon and the order should be vacated and subpoena quashed.

### C.  The fourth *Intel* factor and Fed. R. Civ. P. 26 and 45 favor vacating the Order and quashing the Subpoena because the discovery Amazon seeks is unduly intrusive and burdensome.

The fourth *Intel* factor looks at whether the discovery requested is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. This Circuit has held that "Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45." *In re Global Energy Horizons Corp.*, 647 Fed. Appx., at 85-86. Pursuant to Fed. R. Civ. P. 26, the burden of discovery should be proportional to the needs of a case. Fed. R. Civ. P. 26(d)(1). Under *Intel* factor four and pursuant to Rule 45 and Rule 26, the Court should vacate the Order and quash the Subpoena to protect the trade secrets in the license materials without a demonstrated need for them being produced and on an insufficient response time.

Here, Amazon's requested discovery would require NOAC to do the following burdensome activities with no demonstrated need for the cases in the foreign tribunals:

- Produce a duplicative set of the ~100 AVC/HEVC licenses, despite no need to do so because they are already being made available by Nokia Tech. Oy in German and the UPC.

- Send new notices to the third-party licensees who are licensed under the ~100 AVC/HEVC licenses explaining that these licenses are being redundantly produced again for Germany and the UPC but this time under to a under to-be-negotiated 1782 protective order and provide them at least an opportunity to object.

- Send new notices to ~115 third party licenses notifying them that 27,000+ pages of licensing negotiations need to be produced under to-be-negotiated 1782 protective order and provide them at least an opportunity to object.

- Send additional notices to the third-party licensees who are licensed under the ~15 multiple-technology licenses explaining that their licenses need to be produced production under to-be-negotiated 1782 protective order and provide them at least an opportunity to object.

All of this would require significant and unnecessary burdens disproportionate to the needs of the German Proceedings and UPC Proceedings. *See* Fed. R. Civ. P. 26. Indeed, the requested license agreements, the Munich Regional Court has already considered and decided which licenses are to be produced, and the UPC court has indicated it has doubts as to the relevance of more the ~100 AVC/HEVC licenses which Nokia Tech. Oy has shown willingness to produce subject to the UPC ordering disclosure. Smentkowski Decl. ¶¶ 8-13; *see In re King Mun.*, No. 22-mc-243-MN-JLH, 2023 U.S. Dist. LEXIS 192250, *15-17 (D. Del. Oct. 26, 2023) (finding the foreign court already ruled on the scope of discovery and that "broader discovery was disproportionate to the needs of the case.")

In addition, the requested licensing materials include the trade secrets of Nokia Tech. Oy and Nokia Corp. and their third-party licenses. Koppelman Decl. ¶7; Smentkowski Decl. Ex. A at 3 (Munich Regional Court finding Nokia Tech. Oy credible demonstrated that the licenses could constitute trade secrets); s*ee In re Elec. Arts, Inc.*, 298 Fed. Appx. 568, 569 (9th Cir. 2008) ("the pricing terms, royalty rates, and guaranteed minimum payment terms found in [a licensing agreement] is also information that plainly falls within the definition of trade secrets"). In

Germany and the UPC, there is a right for documents filed with the court to be accessible by at least one natural person from each party. Smentkowski Decl. ¶ 16. German courts and the UPC court do not have the same confidentiality protections as the ITC. *Id.* A German court cannot impose an attorney-eyes only designation to documents produced before the German courts. *Id.* Amazon acknowledges that "German and UPC litigation do not afford litigation materials with the equivalent of an 'attorneys' eyes only' level of protection." D.I. 1 at 11. Nokia Tech. Oy was able to produce third-party confidential documents in the ITC at least in part because of the stringent confidentiality protections the ITC affords to litigants. Koppelman Decl. ¶ 5. Accordingly, this is not a simple re-production of documents from the ITC as Amazon suggests in its *Ex Parte* Application.

Indeed, disclosure of this trade secret information to prospective licensees, like the natural at Amazon allowed to see it, would cause competitive harm to Nokia Tech. Oy and Nokia Corp. and their licensees. Koppelman Decl. ¶ 7. And Rule 45(d)(3)(B)(i) states that a court "may, on motion, quash or modify the subpoena if it requires: … disclosing a trade secret or other confidential research, development, or commercial information." Fed.R.Civ.P. 45(d)(3)(B)(i). Therefore, it is disproportionate to the needs of the case to require notice to a large majority if not all of the ~115 licensees and require production of these trade secret materials without any demonstrated need or relevance for them beyond the ~100 AVC/HEVC licenses already being produced. For these reasons, Amazon's document requests are unduly intrusive and burdensome, and the Court should have denied the application and should now vacate the Order and Quash the Order.

In addition, "On a timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply."

15

Fed.R.Civ.P 45(d)(3)(A)(i). Here, NOAC and Amazon dispute the deadline for NOAC to respond. Amazon did not include a time to respond in its subpoena as served, but Amazon stated its position is that the 7-days in the Order controls the response deadline. Koppelman Decl. ¶ 14, Ex. D. Assuming *arguendo* that Amazon is correct in is reading of the Order and Subpoena, 7 days is a grossly insufficient time to respond because NOAC would need to provide notice to at least a large majority of the ~115 licensees pursuant to those agreements and an opportunity to object. *Id.* ¶ 16. Such notices would require disclosure of the yet-to-be negotiated protective order. *Id.* ¶ 16. It is not possible to comply in 7-days and therefore the time in insufficient, and the Subpoena should be quashed under Rule 45 for that reason as well.

### D.  Ordering Cross-Use of Discovery Among Domestic Proceedings is not Authorized by Section 1782.

The additional relief Amazon sought via its *Ex Parte* Application under Section 1782—cross-use of discovery between the ITC Actions and Delaware Actions—has nothing to do with Section 1782. Section 1782 does not provide the Court with authority to grant such relief and is limited to seeking discovery "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782. The District of Delaware is not a "foreign or international tribunal," and Section 1782 does not support obtaining discovery for use in the Delaware Actions. Amazon invited the Court to err by seeking this type of cross-use relief in an *ex parte* Section 1782 proceeding, and it was clear error to enter Amazon's proposed order containing the cross-use language. Accordingly, NOAC respectfully requests that the Court reconsider and vacate the Order.

Amazon argues why it should access and use certain documents in the German and Unified Patent Court proceedings but never explains why the ITC discovery should also be usable in the Delaware Actions under Section 1782, *or under any other authority*. *See, e.g.,* D.I. at 1-1 at 1-3, 7-12.  Instead, Amazon's *Ex Parte* Application included a single reference in the

introduction section where Amazon stated, "[t]he Court should grant the application, permit Amazon to serve the attached subpoena on Nokia, and *deem the requested materials produced in the Delaware patent litigation*." *Id.* at 2. Without any stated legal basis, Amazon included the requested cross-use relief in its proposed order, and the Court granted the relief. D.I. 1-1 at 2; D.I. 14. Because Section 1782 is strictly limited to authorizing discovery for use in foreign proceedings, the Cross-Use Ruling has no proper basis in law and should be vacated.  This proceeding is not the proper vehicle to adjudicate cross-use among domestic civil actions, and thus NOAC respectfully requests reconsideration of this relief.

> **E. Nokia Respondents and Third Parties Did Not Have an Opportunity to be Heard.**

The Cross-Use Ruling also results in manifest injustice by adjudicating rights of the Nokia 1782 Respondents and the other 100+ third-party licensees in their confidential business information without an opportunity to be heard on the issue of cross-use discovery. On May 16, 2024, in its Motion to Quash, NOAC requested briefing to address the merits of Amazon's *Ex Parte* Application once its Motion to Quash was resolved, but the Court granted the cross-use relief without briefing. As a result, the Nokia 1782 Respondents and their third-party licensees were not provided a sufficient opportunity to be heard as to why Amazon's requested cross-use relief was improper. Accordingly, the *ex parte* nature of the Court's Cross-Use Ruling is another reason the Court should reconsider and vacate its order.

Generally, "*ex parte* proceedings are disfavored." *See United States v. Wecht*, 484 F.3d 194, 214 (3d Cir. 2007). There are narrow situations when *ex parte* proceedings are authorized and appropriate, but there is no authority for an *ex parte*, *collateral* determination on the cross-use of discovery in different domestic proceedings, even one in a different jurisdiction. A "normal" Section 1782 Application can be handled *ex parte* because respondents have a full

opportunity to be heard through a Motion to Quash any resulting subpoena. [case cite]. Because the Cross-Use Ruling was not authorized under Section 1782, however, there is no basis for it to be decided *ex parte*. Courts in the Third Circuit have held that, when discovery is not expressly authorized to be *ex parte*, such proceedings are inappropriate absent extraordinary circumstances. *See United States v. Stewart*, 1997 U.S. Dist. LEXIS 2444, at *4 (E.D. Pa. Mar. 4, 1997); *United States v. Fulton,* 2013 U.S. Dist. LEXIS 123229, at *3 (D.N.J. Aug. 29, 2013) (party seeking the *ex parte* application "faces a heavy burden"). Here, there is no statutory authorization for an *ex parte* motion or ruling no extraordinary circumstances necessitating it.

Amazon has complained that NOAC and the other Nokia Respondents did not file a formal motion to intervene in this proceeding. D.I. 10 at 2. But this is irrelevant. In Section 1782 proceedings, courts have treated motions to quash as including intervention. *See In re Martinez*, 2024 U.S. Dist. LEXIS 101450, *12 (S.D. Fla. Jun. 6, 2024) (treating a motion to quash an *ex parte* application under 28 U.S.C. § 1782 as both a motion to quash and motion to intervene). In addition, Amazon reached out to NOAC's counsel and specifically requested that they file a joint letter with the Court invoking the discovery dispute, and Amazon filed such a joint letter. Koppelman Decl. ¶ 12. Thus, in both the Motion to Quash and joint letter, it was clear that NOAC was requesting to be heard. Therefore, Nokia sought to be heard.

Finally, the licensing documents that are the subject of the Cross-Use Ruling contain not only the confidential business information of Nokia, but also of the 100+ third-party licensees with whom Nokia confidentially negotiated and entered license agreements. Koppelman Decl. ¶¶ 5-7. When courts consider the question of cross-use of materials that involve third-party confidential information, it is important for those rights and interests to be protected. *See Twilio, Inc. v. Telesign Corp.*, No. 16-cv-06925-LHK (SVK), 2017 U.S. Dist. LEXIS 52532, *4-*5

(N.D. Cal. Apr. 5, 2017) (approving a cross-use proposal because the "[i]nterests of third parties will be adequately protected" because the "[t]hird parties will receive notice… and will have sufficient opportunity to raise their concerns with the Court if necessary"). The lack of any provision for this important consideration in the Cross-Use Ruling is further error. In sum, the Court should not have entered the Cross-Use Ruling without first providing the third parties notice and an opportunity to be heard themselves.

### F.  Under Principles of Comity, Courts Should Refrain from Collaterally Modifying Protective Orders from Other Adjudicative Bodies.

Under principles of comity, courts should not attempt to modify orders in other jurisdictions. *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) (cautioning that "the district court must refrain from issuing discovery orders applicable only to collateral litigation"). "As long as a protective order remains in effect, the court that entered the order retains the power to modify it . . . ." *Id.* at 1427. Here, there is no authority for this Court to effectively modify the ITC protective orders. The Court's Cross-Use Ruling creates confusion as to whether the ruling has collaterally eliminated the ITC protective orders' prohibition of confidential materials outside certain ITC proceedings. The Cross-Use Ruling purports to grant Amazon the right to use these designated materials beyond what is allowed by the ITC protective orders—an issue Amazon did not bring the Court's attention. This impinges on the right of the ITC to manage discovery under its own protective orders.

Amazon remains bound by the ITC protective orders, and if it wanted to modify the terms it should have sought that *from the ITC* by showing good cause.  Koppelman Decl. ¶ 11, Ex. C (ITC ALJ Johnson Hines: "I want to be clear that I will not sign an amendment to the protective order to allow cross-use in other pending cases. The parties would violate the protective order in this case if they agreed to the kind of cross-use that [counsel] was at least, I believe, implying

might be done."); 19 C.F.R. § 210.34(a); *United Nuclear*, 905 F.2d at 1428 (cautioning that "the district court must refrain from issuing discovery orders applicable only to collateral litigation"); *Doe v. Doe Agency*, 608 F. Supp. 2d 68, 71 (D.D.C. 2009) (when a court is asked to interfere with or usurp the continuing power of another court, "considerations of comity and orderly administration of justice demand that the nonrendering court should decline jurisdiction").

Courts have the power to modify their own protective orders upon good cause shown, but not those of other Courts. Fed. R. Civ. P. 26(c)(1); *Glenmede Tr. Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995); *Headwater Rsch. LLC v. Samsung Elecs. Am., Inc.*, No. 2:22-CV-00422-JRG-RSP, 2024 U.S. Dist. LEXIS 62132, *5-7, *9-*11 (E.D. Tex. Apr. 4, 2024) (denying modification of protective order for cross-use based on lack of good cause and denying Section 1782 application). When courts permit cross-use of confidential materials, it is done by modifying their own protective order based on good cause shown to allow discovery taken under that protective order to be used in other proceedings. *See Twilio*, 2017 U.S. Dist. LEXIS 52532 at *4-*5; *Headwater*, 2024 U.S. Dist. LEXIS 62132 at *5-7; *United Nuclear*, 905 F.2d at 1428 at *10. Here, there are no protective orders entered in this 1782 proceeding, so there is no protective order here to modify, and there was of course no showing of good cause.

For these additional reasons, it was clear error for the Court to enter the Cross-Use Ruling, and NOAC respectfully requests the Court to reconsider and vacate its ruling.

## V.     Conclusion.

Nokia respectfully requests that the Court grant this Motion and such further relief as the Court deems just and proper.

Dated: July 19, 2024                          Respectfully submitted,

OF COUNSEL:                                   FARNAN LLP

Ryan W. Koppelman                             /s/ Brian E. Farnan
Alston & Bird LLP                             Brian E. Farnan (Bar No. 4089)
350 S. Grand St. 51st Floor                   Michael J. Farnan (Bar No. 5165)
Los Angeles, CA 90071                         919 North Market Street, 12th Floor
Telephone: 213-576-1000                       Wilmington, DE  19801
ryan.koppelman@alston.com                     Telephone: 302-777-0300
                                              bfarnan@farnanlaw.com
                                              mfarnan@farnanlaw.com

                                              Attorneys for Nokia