IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re Ex Parte* Application of<br><br>Amazon.com, Inc.,<br><br>     Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery. | CA No.: 1:24-493 (GBW) |

**DECLARATION OF RYAN W. KOPPELMAN**

I, Ryan W. Koppelman, hereby declare, pursuant to 28 U.S.C. § 1746, as follows:

1. The statements herein reflect my personal knowledge and belief based on reasonable investigation and information presently known to me. If called to testify as a witness, I could and would competently testify thereto.

2. I am a partner with the law firm of Alston & Bird and counsel of record for Nokia of America Corporation ("NOAC") in the above-captioned matter. I make this declaration in support of NOAC's Motion to Vacate and Quash.

3. On October 27 and October 31, 2023, Nokia Technologies Oy and Nokia Corporation filed two Delaware patent infringement actions. *See Nokia Corp. et al. v. Amazon.com, inc.,* No. 1:23-cv-1232-GBW at D.I. 1; *Nokia Tech. Oy v. Amazon.com Inc, et al*, No. 1:23-cv-1236-GBW at D.I. 1 (collectively, "Delaware Actions"). Amazon filed motions to dismiss for failure to state a claim as to certain patents in both cases. *See* Case No. 1:23-cv-1232-GBW at D.I. 18; Case No. 1:23-cv-1236-GBW at D.I. 17. The Court has not ruled on Amazon's motions to dismiss, and discovery has not begun in the Delaware Actions.

4. On October 31, 2023, Nokia Technologies Oy and Nokia Corporation (collectively,

1

"Nokia") filed two ITC actions against Amazon.com, Inc. ("Amazon"), Amazon.com Services LLC, and HP Inc., which are currently pending with the evidentiary hearings (trials) expected in July 2024 and September 2024 for 337-TA-1379 and -1380, respectively (collectively, "ITC Actions").

5. During ITC discovery, Amazon requested production of certain license agreements and licensing communications between Nokia Technologies Oy and Nokia Corporation and other third-party licensees. To comply with these ITC requests for production, Nokia Technologies Oy and Nokia Corporation notified and sought consents (or non-objections) from 100+ third parties to produce responsive license agreements and licensing communication to Amazon. Nokia Technologies Oy was able to produce third-party confidential documents in the ITC at least in part because of the stringent confidentiality protections the ITC affords to litigants.

6. When notifying those third parties, Nokia attached copies of the ITC protective orders entered in the respective ITC Actions, showing how their confidential business information ("CBI") in the licensing documents would be protected, including a provision that outside counsel and experts receiving their licensing CBI would be required to first sign and file an agreement stating they would "utilize such confidential business information solely for purposes of [the ITC investigation]." The protective orders for 337-TA-1379 and -1380 are attached as **Exhibit A** and **Exhibit B**, respectively.

7. The requested license agreements and licensing communications contain trade secret information. Specifically, these documents contain highly sensitive materials exchanged confidentially with these third-party licensees. This information, if made public, would give competitors an advantage by revealing information that could be used against Nokia Technologies Oy, Nokia Corporation, and their licensees by other companies trying to negotiate licenses. They contain highly confidential licensing terms like pricing terms, royalty rates, royalty structures,

minimum payments, and description of the scope of the license grants. Disclosure of this trade secret information to prospective licensees, like Amazon's corporate representatives, would cause competitive harm to Nokia Technologies Oy, Nokia Corporation, and their licensees.

8.   In October and November 2023, Nokia Technologies Oy filed patent infringement cases in the Munich and Mannheim Regional Courts in Germany and the UPC. The relevant cases here assert patent infringement based on Amazon's practicing of the H.265/HEVC video coding standard (which is the successor standard to H.264/AVC). Based on my current understanding of what was similarly searched for and produced in the ITC, Amazon's licensing requests in Germany would likely amount to about approximately 115 license agreements, including approximately 100 AVC/HEVC licenses and approximately 15 multiple-technology licenses which are further directed to technologies beyond AVC/HEVC, for example cellular telecom standards and other video coding technologies.

9.   On March 11, 2024, counsel for Amazon emailed counsel for Nokia regarding cross-use of documents produced at the ITC "in other proceedings." The parties met and conferred on Amazon's request, where counsel for Nokia explained that this type of cross-use was not allowed under the stringent ITC protective order covering the documents Amazon wanted for cross-use.

10.   On April 9, 2024, counsel Amazon further met and conferred with Nokia's ITC counsel regarding its cross-use request. Nokia's ITC counsel also explained that such cross-use was not possible under the ITC protective order. None of Nokia's counsel heard anything further from Amazon regarding cross-use after that call until Amazon filed its 1782 application on April 18, 2024.

11.   Administrative Law Judges in the ITC have stated that documents protected under ITC protective orders should not be allowed for cross-use in other proceedings. For example, ALJ Johnson Hines, who is assigned to the 337-TA-1379 ITC investigation, recently said in a separate

investigation: "I want to be clear that I will not sign an amendment to the protective order to allow cross-use in other pending cases. The parties would violate the protective order in this case if they agreed to the kind of cross-use that [counsel] was at least, I believe, implying might be done." A true and correct copy of the transcript where ALJ Hines made this statement is attached as **Exhibit C.** *See Certain Vehicle Telematics, Fleet Management, and Video-Based Safety Systems, Devices, and Components Thereof*, Inv. No. 337-TA-1393, EDIS Doc. 821751 (U.S.I.T.C. May 17, 2024).

12. With regard to Amazon's 1782 application, Amazon reached out to NOAC's counsel and specifically requested that they file a joint letter with the Court invoking the discovery dispute. On July 2, 2024, Amazon filed a joint letter requesting a discovery teleconference.

13. On July 8, 2024, counsel met and conferred in an attempt to reach an agreement third-partyconfidentconfer, it was Nokia's position that Amazon was already receiving ~100 AVC/HEVC licenses in the Germany, and that this should be sufficient given that the Munich Regional Court had declined to the additional licenses Amazon requested. Nokia was willing to expand that production somewhat if part of a reciprocal exchange, as ordered by this Court, but Amazon demanded production of everything requested in its *Ex Parte* Application while refusing to reciprocate with any technical documents sought in Nokia's 1782 application.

14. On July 12, 2024, Amazon served only NOAC with a subpoena providing no date for compliance. A true and correct copy of Amazon's subpoena is attached as **Exhibit D.**

15. On July 18, 2024, counsel for Amazon refused to agree that Nokia's response date was 14 days after service and threatened to argue Nokia waived its rights if it did not respond in 7 days.

16. Production of the requested licensing documents would require either notice to and consent from third-party licensees or an appropriate court order. Here, Nokia of America

4

Corporation would need to provide notice to at least a large majority, if not all, of the ~115 licensees pursuant to those agreements and an opportunity to object. In addition, disclosure of these materials would require yet-to-be negotiated protective orders.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 19th day of July, 2024, in Los Angeles, California.

>  /s/ Ryan W. Koppelman
>  Ryan W. Koppelman