IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMAZON.COM, INC., <br><br> Petitioner, <br><br> v. <br><br> NOKIA OF AMERICA CORPORATION, <br><br> Respondent. | Civil Action No. 24-493-GBW |

## MEMORANDUM ORDER

Pending before the Court is Nokia of America Corporation's ("Nokia" or "Respondent") Motion to Vacate and Quash. D.I. 16. Nokia is requesting an order vacating this Court's order granting Amazon's *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 ("Order") and quashing Amazon's Subpoena to Produce Documents. Nokia's Motion has been fully briefed (D.I. 17; D.I. 23; D.I. 26). For the reasons herein, the Court grants Nokia's motion.

**I.      BACKGROUND**

**A.      The Domestic Proceedings.**

On October 27 and October 31, 2023, Nokia Tech. Oy and Nokia Corp. filed two Delaware patent infringement actions. *See Nokia Corp. v. Amazon.com, Inc.*, No. 23-cv-1232-GBW at D.I. 1; *Nokia Tech. Oy v. Amazon.com, Inc.*, No. 23-cv-1236-GBW at D.I. 1 (collectively, "Delaware Actions"). Amazon filed motions to dismiss for failure to state a claim as to certain patents in both cases. *See* No. 23-cv-1232-GBW at D.I. 18; No. 23-cv-1236-GBW at D.I. 17. The Court has not ruled on Amazon's motions to dismiss, and discovery has not begun in the Delaware Actions. D.I. 17 at 5.

On October 31, 2023, Nokia Tech. Oy and Nokia Corp. filed two ITC actions against Amazon.com, Inc., Amazon.com Services LLC, and HP Inc. ("HP"), which are set for evidentiary hearings (trials) in July 2024 and September 2024 (337-TA-1379 and -1380, respectively; collectively, "ITC Actions"). *Id.* During ITC discovery, Amazon requested license agreements and communications between Nokia Tech. Oy and Nokia Corp. and the other third-party licensees. *Id.* To comply with these ITC requests, Nokia notified and sought consent (or non-objection) from 100+ third parties to produce responsive documents to Amazon. *Id.* In doing so, Nokia attached copies of the ITC protective orders showing how their confidential business information ("CBI") in the licensing documents would be protected. *Id.* This protection included a provision that outside counsel and experts receiving licensing CBI will be required to first sign and file an agreement stating they will "utilize such confidential business information solely for purposes of this investigation." *Id.*

**B.     The Foreign Proceedings.**

In October and November 2023, Nokia Tech. Oy filed patent infringement cases in the Munich and Mannheim Regional Courts in Germany and the Unified Patent Court ("UPC"). *Id.* Those cases assert patent infringement based on Amazon's practicing of the H.265/HEVC video coding standard (which is the successor standard to H.264/AVC). *Id.* In the German Proceedings, Amazon requested the court to order that Nokia Tech. Oy produce (i) the approximately 100 H.264/AVC and H.265/HEVC licenses that Nokia Tech. Oy had identified to Amazon in the course of negotiations, and (ii) all other licenses pertaining to Nokia's video coding portfolio. *Id.* Amazon's licensing requests in Germany would likely amount to about ~115 license agreements, including ~100 AVC/HEVC licenses and ~15 multiple-technology licenses which are further directed to technologies beyond AVC/HEVC. *Id.* at 5-6. Amazon did not request production of licensing communications in Germany. *Id.* at 6.

Nokia Tech. Oy and Amazon engaged in negotiations to produce licenses that Nokia Tech. Oy had identified, consisting of ~100 H.264/AVC and H.265/HEVC licenses. *Id.* at 6. On June 7, 2004, Nokia Tech. Oy requested a court order from the Munich Regional Court for disclosure of those ~100 AVC/HEVC licenses. *Id.* On June 10 and 24, 2024, the Munich Regional Court issued orders to produce those ~100 AVC/HEVC licenses and at the same time denied Amazon's request for any additional licenses that Amazon requested. *Id.* Thereafter, Nokia Tech. Oy disclosed the ~100 licenses and sales data for certain of those licenses to Amazon during the June 28, 2024 proceeding before the Munich Regional Court. *Id.* Amazon appealed the Munich Regional Court's denial of Amazon's request for any additional licenses, and the Munich Regional Court denied the appeal. *Id.*

In the UPC proceeding, Amazon likewise requested the court to order Nokia Tech. Oy to produce (i) the ~100 AVC/HEVC licenses, and (ii) all other licenses pertaining *inter alia* to Nokia's video coding portfolio. *Id.* In the UPC proceeding, Nokia Tech. Oy was again willing to produce the ~100 AVC/HEVC licenses. To this end, on June 3, 2024, Nokia Tech. Oy voluntarily requested a court order from the UPC for disclosure of those approximately ~100 AVC/HEVC licenses. *Id.* at 6-7. In response, the UPC issued an order on July 12, 2024. *Id.* at 7. The UPC order states that Amazon's requests for disclosure of the ~100 AVC/HEVC license agreements are unlikely to be successful at present. *Id.* Also, in that order, the UPC asked Amazon to state whether Amazon wanted to continue adhering to its current disclosure requests. *Id.* The UPC order further stated that, in the court's experience, the undifferentiated disclosure of more than 100 license agreements is generally not expedient and not always relevant for a decision on the merits. *Id.* Therefore, the UPC encouraged the parties to reach a consensus on the license agreements to be submitted in direct negotiations. *Id.*

C. **Nokia's and Amazon's Section 1782 Ex Parte Application.**

On November 9, 2023, Nokia Tech. Oy and Alcatel Lucent SAS initiated a patent lawsuit in the Eastern District of Virginia. D.I. 23 at 2. Nokia submitted to that court an *Ex Parte* Application for Section 1782 discovery from Amazon for use in litigation in Germany. *See In re Nokia Techs. Oy*, No. 23-cv-1395-GBW (D. Del.) at D.I. 1. Nokia's Section 1782 application was transferred to this Court on December 7, 2023, pursuant to a stipulation. D.I. 17 at 7. Then, on January 2, 2024, Nokia submitted a joint letter to this Court requesting the scheduling of a discovery teleconference regarding its Section 1782 application. *Id.* On January 24, 2024, the Court entered an order requiring Amazon to submit a letter response as to why Nokia's Section 1782 application should not be granted and requiring Nokia to provide a reply to Amazon's letter. *Id.* On January 30, 2024, pursuant to this Court's order, Amazon responded to Nokia's Section 1782 Application. *Id.* On February 2, 2024, Nokia filed a reply. *Id.* On April 18, 2024, the Court denied Nokia's Section 1782 Application. *Id.*

On April 18, 2024, the same day the Court denied Nokia's Section 1782 *Ex Parte* Application, Amazon filed its own *Ex Parte* Application that is the subject of this Motion. *Id.* at 8; *see* D.I. 1. Amazon's *Ex Parte* Application purports to seek discovery from Nokia Tech. Oy, Alcatel Lucent SAS, Nokia Corp., and Nokia of America Corporation (the "Nokia Respondents"). Amazon requested the Court issue a summons, which Amazon served on Nokia's registered agent, but no other Nokia Respondents. D.I. 17 at 8. On May 16, 2024, Nokia filed a motion to quash based on an improper summons and service of process, and, in that motion, Nokia stated: "After the Court resolves this motion to quash, Nokia respectfully requests the opportunity to be heard on the substance of Amazon's *Ex Parte* Application via an appropriate briefing schedule." D.I. 9 at 3, 9. On May 28, 2024, Amazon filed a notice of non-opposition to Nokia's motion to quash, stating that Amazon "served Nokia of America Corporation . . . with its Section 1782 application

4

as a courtesy, solely to provide it notice of the application . . . [and] neither service of the application nor issuance of a summons was ever required." D.I. 10.

On July 2, 2024, the parties wrote a joint letter to this Court, requesting the scheduling of a discovery teleconference regarding Amazon's Section 1782 Application. D.I. 11. On July 3, 2024, the Court issued an order requiring the parties to: "meet and confer promptly and attempt to reach agreement on reasonable reciprocal discovery requests for use in the foreign proceedings in Germany and the Unified Patent Court." D.I. 12. On July 8, 2024, the parties met and conferred. D.I. 17 at 8. During that meet and confer, Nokia asserted that Amazon was already receiving ~100 AVC/HEVC licenses in the German litigation, and that this should be sufficient given that the Munich Regional Court had denied the additional licenses Amazon requested. *Id.* Nokia offered to expand that production somewhat if part of a reciprocal exchange, as ordered by this Court, but Amazon refused. *Id.* at 8-9. On July 10, 2024, the parties wrote a joint letter to the Court, informing it that they had not reached a reciprocal discovery agreement. D.I. 13. On July 11, 2024, the Court granted Amazon's *Ex Parte* Application. D.I. 14. On July 12, 2024, Amazon served Nokia with a subpoena. D.I. 15.

## II.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1782. Section 1782 provides that the "district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). When granting Amazon's § 1782 Application, the Court retained jurisdiction over this matter.

## III. LEGAL STANDARD

### A. 28 U.S.C. § 1782.

The purpose of 28 U.S.C § 1782 is "to provide federal-court assistance in the gathering of evidence for use in a foreign tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Section 1782 sets forth three mandatory requirements: "(1) the person from whom discovery is sought 'resides or is found' within the district; (2) the discovery is 'for use in a proceeding before a foreign or international tribunal'; and (3) the application is made by an 'interested person.'" *In re EWE Gasspeicher GmbH*, 612 F. Supp. 3d 402, 404 (D. Del 2020) (citing to *In re Bayer AG*, 146 F.3d 188, 193 (3d Cir. 1998)).

If the statutory requirements are met, the district court has discretion to grant or deny a Section 1782 application. *See In re King Mun.*, No. 22-mc-243-MN-JLH, 2023 U.S. Dist. LEXIS 192250, *10-11 (D. Del. Oct. 26, 2023). In exercising its discretion, a district court considers the four *Intel* factors set by the Supreme Court. *In re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at *11; *Intel*, 542 U.S. at 264-65. The Federal Rules of Civil Procedure are expressly incorporated into 28 U.S.C. § 1782. *In re Global Energy Horizons Corp.*, 647 Fed. Appx. 83, 85-86 (3rd Cir. Apr. 2016). Thus, Federal Rules of Civil Procedure 26 and 45 both apply to a Section 1782 application. *See, e.g., Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (stating that Fed. R. Civ. P. 26 is applicable to a Section 1782 application); *see also In re Global Energy Horizons Corp.*, 647 Fed. Appx. at 85-86.

### B. Motion to Quash and Vacate.

Parties subpoenaed through a Section 1782 application have a due process right to file motions to quash. *In re Mota*, No. 19-00369-MN, 2020 U.S. Dist. LEXIS 3261, *2 (D. Del. Jan. 8, 2020) ("recipients can raise[] objections and [otherwise] exercise[] their due process rights by motions to quash") (internal quotations omitted); *see Lae Techs. Hong Kong Ltd. v. Demuren*, No.

6

23-2314-ZNQ, 2024 U.S. Dist. LEXIS 35060, at *5 ("[A]n order authorizing discovery under Section 1782 may be issued on an *ex parte* application, without prejudice to the subpoenaed party's right to file a motion to vacate the order and/or quash the subpoena.") (citing *In re Yilport*, 22-3028-ES-AME, 2023 U.S. Dist. LEXIS 28275, at *3 (D. N.J. Feb. 21, 2023)); *see also In re Mesa Power Group, LLC*, No. 2:11-mc-280-ES, 2012 U.S. Dist. LEXIS 179870, at *9 (D. N.J Nov. 20, 2012). This is because "Section 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure." *Lae Techs. Hong Kong Ltd.*, 2024 U.S. Dist. LEXIS 35060, at *5 (citing *Bayer AG*, 173 F.3d at 192).

To decide a motion to vacate under Section 1782, a district court should first consider the statutory requirements. *In re Sauren Fonds-Select Sicav*, No. 16-cv-00133-SDW-LDW, 2016 U.S. Dist. LEXIS 148281, at *6-8 (D. N.J Oct. 26, 2016). If the court reaffirms that the petitioner met the statutory factors, it then considers whether it appropriately exercised its discretion in view of the discretionary *Intel* factors. *See id.* A Section 1782 order should be vacated if a court determines that either the statutory factors were not met or that it did not appropriately exercise its discretion in view of the four discretionary *Intel* factors. *See id.* at *6-8; *see also, e.g.*, *Pinchuk v. Chemstar Prods. LLC*, 13-mc-306-RGA, 2014 U.S. Dist. LEXIS 86781 (D. Del. June 26, 2014) (granting a motion to vacate a Section 1782 order and quash the Section 1782 subpoena); *In re Ex Parte Eni S.P.A.*, 20-mc-334-MN, 2021 U.S. Dist. LEXIS 52304, at *12 (D. Del. Mar. 19, 2021).

IV. **DISCUSSION**

In support of its motion, Nokia contends that (1) the *Intel* factors weigh in favor of denying Amazon's *Ex Parte* Application (2) the Subpoena is improper under Federal Rule of Civil Procedure 45 (which is incorporated into the arguments for *Intel* Factor Four), and (3) it was an error to grant Amazon's requested Cross-Use Ruling, because an *ex parte* Section 1782 application is the proper vehicle for such a request. D.I. 17 at 11. With regards to the "cross-ruling" argument,

7

Amazon has conceded that it will use the documents requested in this Section 1782 action only in foreign proceedings; thus, rendering that argument moot. D.I. 23 at 13-14. However, after analyzing the *Intel* factors and exercising its discretion, the Court grants Nokia's Motion to Vacate and Quash (D.I. 16).

A.   **Nokia Establishes That, Under the *Intel* Factors, the Court Should Grant this Motion.**

"Section 1782 of Title 28 authorizes a district court, upon the application of any interested person, to order a person residing or found in this district to give testimony or produce documents for use in a proceeding in a foreign or international tribunal." *In re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at *10 (citing 28 U.S.C. § 1782(a)) (cleaned up). If these "statutory conditions are satisfied, the court then determines in its discretion whether the requested discovery should be allowed, taking into consideration certain factors identified by the Supreme Court in *Intel*." *Id.* at *10-11 (citing *Intel Corp.*, 542 U.S. at 263-64). The *Intel* factors are "(1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests." *Id.* at *11 (citation omitted).

"Presented with a § 1782 application, a court first decides whether certain statutory requirements are met, and if so, the court may then consider other discretionary factors to determine whether to grant the application." *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 694 (3d Cir. 2018). Nokia does not dispute that Amazon's application satisfies all three statutory requirements. D.I. 23 at 6. Nokia likewise does not dispute the second *Intel* factor. *Id.* This analysis continues onto the remaining *Intel* factors.

1.  **The First *Intel* Factor Favors Granting Nokia's Motion Because the Evidence is Within the Foreign Courts' Reach.**

The first *Intel* factor considers "whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid." *In re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at *11. Nokia contends that the licenses that Amazon seeks "are demonstrably within the foreign courts' reach and accessible absent Section 1782." D.I. 17 at 11. Nokia further adds that the Munich Regional Court has already ruled on which license agreements are to be produced in that proceeding. *Id.* Nokia similarly claims that the licenses are in the reach of the UPC but that the "UPC court has issued an order outlining its view on the lack of relevance of the license agreements." *Id.*

Amazon counters that the licenses are not within the reach of foreign courts because the Munich Regional Court merely granted a voluntary request to produce the licenses. D.I. 23 at 7. Amazon also claims that it has "no recourse to obtain the remaining licenses in Germany" because all it can demand "are documents that [it] is able to identify specifically—individually, not by category." *Id.* at 7-8 (citation omitted). Amazon offers a similar account in the UPC where that court "has indicated that it is unlikely to order such a production." *Id.* Nokia takes these arguments as a concession that "there are mechanisms for Amazon to request documents from Nokia through the rules of the foreign proceedings." D.I. 26 at 7.

The Court agrees with Nokia. Both parties indicate that there are ways for these foreign courts to access the licenses in question. Moreover, "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 244. Amazon appears to make the argument that it will not get the licenses from these foreign courts, which is a different argument than the foreign courts cannot

9

retrieve the licenses at all. Regardless, Nokia is subject to the jurisdiction of the foreign courts, and those courts may order Nokia to produce the evidence that their laws require. *See Via Vadis Controlling GmbH v. Skype, Inc.*, 2013 U.S. Dist. LEXIS 23434, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013). Thus, the first *Intel* factor favors granting Nokia's motion.

2. **The Third *Intel* Factor Favors Granting Nokia's Motion Because Amazon Did Not Request the Licensing Communications in the Foreign Proceedings.**

The third *Intel* factor considers "whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States." *In re King Mun.*, 2023 U.S. Dist. LEXIS 192250, at *11. Amazon states that it has already requested a court order in Germany and the UPC "for the documents sought through this Section 1782 application." D.I. 17 at 12. Nokia claims that statement is false and "a perception that [Amazon] has 'side-stepped less than favorable discovery rules by resorting immediately to § 1782[, which] can be a factor in a court's analysis.'" *Id.* (quoting *In re Nokia Techs. Oy*, No. 23-01395-GBW, 2024 U.S. Dist. LEXIS 70832, at *10 (D. Del. Apr. 18, 2024)). Nokia highlights the foregoing case because, in that case, this Court held that Nokia's "failure to attempt discovery in Germany indicates an attempt to circumvent the Germany discovery rules." *In re Nokia Techs. Oy*, 2024 U.S. Dist. LEXIS 70832 at *11.

Amazon does not dispute that it did not ask for all the same information in the German courts and the UPC. Rather, Amazon asserts that it does not matter. D.I. 23 at 8. Amazon claims that a party seeking discovery under Section 1782 need not request the exact same set of documents in a foreign court before filing an application. *Id.* at 8-9. Amazon attempts to bolster its argument by quoting language from *In re Nokia Techs. Oy*: "It is not a prerequisite for a § 1782 applicant to exhaust all potential discovery procedures in the foreign proceedings in order to obtain a federal court's assistance under the statute." 2024 U.S. Dist. LEXIS 70832 at *10; D.I. 23 at 9.

10

Amazon's interpretation, however, is incorrect. While it is true that Amazon did not need to exhaust all of its potential discovery procedures, it must still "attempt[] to seek [] discovery in Germany." *Id.* at 11. Here, Amazon admits that it "did not request the licensing communications in the foreign proceedings." D.I. 26 a 2. Also, both parties agree that Amazon's requests for additional Nokia licenses and Nokia's licensing communications in the foreign proceedings "likely would have been futile." D.I. 23 at 9 (citation omitted). Because Amazon would likely not succeed in receiving these documents in the foreign proceedings, the request for them here has the "perception of [side-stepping] less than favorable discovery rules." *In re Nokia Techs. Oy*, 2024 U.S. Dist. LEXIS 70832 at *10. Therefore, this factor also favors granting Nokia's motion.

3. **The Fourth *Intel* Factor Favors Amazon Because Nokia Does Not Provide Evidence of Production Being a Burden.**

The fourth *Intel* factor looks at whether the discovery requested is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The Third Circuit has held that "Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45." *In re Global Energy Horizons Corp.*, 647 Fed. Appx. at 85-86. Pursuant to Federal Rule of Procedure 26, the burden of discovery should be proportional to the needs of a case. Fed. R. Civ. P. 26(d)(1). Nokia claims that, under *Intel* factor four and pursuant to Rule 45 and Rule 26, "the Court should vacate the Order and quash the Subpoena to protect the trade secrets in the license materials without a demonstrated need for them being produced and on an insufficient response time." D.I. 17 at 13.

Nokia lists numerous reasons it claims satisfy this factor. Among them, Nokia would have to send notices to "the third-party licenses . . . explaining that these licenses are being redundantly produced again;" "~115 third party licenses notifying them that 27,000+ pages of licensing negotiations need to be produced;" and "the third-party licensees who are licensed under the ~15

11

multiple-technology licenses explaining that their licenses need to be produced under to-be-negotiated 1782 protective order." D.I. 17 at 14. Additionally, Nokia contends that the court must provide all of these parties "at least an opportunity to object." *Id.* Nokia claims that these notices would "require significant and unnecessary burdens disproportionate to the needs of the German Proceedings and UPC Proceedings." *Id.*

Nokia further contends that production would be disproportionate in this case because "the Munich Regional Court has already considered and decided which licenses are to be produced, and the UPC court has indicated it has doubts as to the relevance of more the ~100 AVC/HEVC licenses." *Id.* Moreover, Nokia highlights that the "requested licensing materials include the trade secrets of Nokia Tech. Oy and Nokia Corp. and their third-party licenses." *Id.* Federal Rule of Civil Procedure 45(d)(3)(B)(i) states that a court "may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i). Nokia, therefore, claims that producing trade secrets would be disproportionate. D.I. 17 at 15. Furthermore, Nokia is concerned about disclosure because "German courts and the UPC court do not have the same confidentiality protections as the ITC." *Id.* at 15. This disclosure, Nokia concludes, "would cause competitive harm to Nokia Tech. Oy and Nokia Corp. and their licensees." *Id.*

Nokia reinforces its argument by claiming that Amazon's need for this information is minimal. First, Nokia asserts that Amazon has no need for the Video Codec Licenses because Nokia is voluntarily offering them in the foreign proceedings. D.I. 26 at 5. Second, Nokia claims that Amazon does not show how it needs the multi-technology licenses on top of the Video Coded Licenses. *Id.* at 6. Third, Nokia contends that the licensing communications are of limited relevance and prejudicial because of the significant volume—nearly 27,000 pages. *Id.* at 7.

12

Lastly, Nokia quotes the Federal Rules of Civil Procedure to contend that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply." *Id.* at 15-16 (citing Fed. R. Civ. P 45(d)(3)(A)(i)). In Nokia's view, it is not possible to comply with the subpoena in seven days and therefore the time is insufficient, and the Subpoena should be quashed under Rule 45 for that reason as well. *Id.*

Amazon disagrees for two reasons: 1) reproducing the same documents in other actions would not be burdensome, and 2) the remaining licenses Nokia has not produced in Germany are just 15 out of 115. D.I. 23 at 10-11. Amazon cites to cases where the movant did not prove that the discovery requests at issue were burdensome. *Id.*; *see In re Ex Parte Apple Inc.*, No. MISC 12-80013 JW, 2012 WL 1570043, at *3 (N.D. Cal. May 2, 2012) ("Nokia has not met its burden of persuasion that [a counterparty's] limited request for licenses and correspondence is unduly intrusive or burdensome."); *see also IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 921 (N.D. Cal. 2014) (finding it appropriate to use a § 1782 application to "seek[] leave to obtain copies of [a counterparty]'s license agreements for use in the German [patent litigation] proceeding").

Amazon also claims that it has agreed to all of Nokia's proposed revisions to a proposed protective order, ameliorating Nokia's confidentiality concerns. D.I. 23 at 12. Finally, Amazon clarifies that the deadline for Nokia to respond to the subpoena was set by the Court, countering Nokia's assertion that the time to respond was "grossly insufficient." *Id.* at 5 n.6.

Amazon's arguments are persuasive. While Nokia makes various statements about the relevance and burden of various documents, it does not cite to any caselaw to support its assertions. On the other hand, Amazon has provided a handful of cases that show such requests are par for

13

the course and in line with this Court's past practices. As such, this factor leans towards Amazon, favoring the denial of Nokia's motion.

Having considered all of the relevant *Intel* factors, the Court finds that, on balance, the *Intel* factors weigh in support of granting Nokia's motion. Therefore, the Court exercises its discretion to grant Nokia's motion.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Nokia's Motion to Vacate and Quash, D.I. 16.

\* \* \*

WHEREFORE, at Wilmington this 16th day of January 2025, **IT IS HEREBY ORDERED** that Nokia's Motion to Vacate and Quash (D.I. 16) is **GRANTED**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE